609 A.2d 1133 (1992)
Joseph A. MOORE, Jr., Appellant,
Phillip K. Moore, Appellant,
William K. Bates, Appellant,
v.
UNITED STATES, Appellee.
Nos. 91-CM-742, 91-CM-758, 91-CM-760.
District of Columbia Court of Appeals.
Submitted April 10, 1992.
Decided July 2, 1992.
Martin W. Rosendorf, Silver Spring, Md., appointed by this court, was on the brief for appellant Joseph A. Moore, Jr.
Bernadette V. Armani, Riverdale, Md., appointed by this court, was on the brief for appellant Phillip K. Moore.
Bruce E. Denslow, Washington, D.C., appointed by this court, was on the brief for appellant William K. Bates.
Jay B. Stephens, U.S. Atty., and John R. Fisher, Elizabeth Trosman and Peter R. Zeidenberg, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.
Before TERRY, STEADMAN and SULLIVAN, Associate Judges.
SULLIVAN, Associate Judge:
These cases, consolidated on appeal, present the primary issue of whether corroboration is required to prove solicitation for the purpose of homosexual prostitution in the District of Columbia.[1] We hold that it is not. Gary v. United States, 499 A.2d 815 (D.C.1985) (en banc), cert. denied, 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986).
Joseph Moore also challenges his conviction on the ground that the trial court erred by admitting hearsay statements as substantive evidence against him. In addition, Phillip Moore challenges the sufficiency of the evidence to sustain his conviction. We hold that both arguments are devoid of merit.
Accordingly, we affirm the trial court's conviction of each defendant following a consolidated bench trial for soliciting money in exchange for sex in violation of D.C.Code § 22-2701(a) (1989).[2] Since we *1134 hold, however, that the government was not required to prove corroboration, we affirm on grounds other than those on which the trial court relied in its memorandum opinion dated June 11, 1991. See Craig v. United States, 551 A.2d 440 n. 4 (D.C.1988).

I.
The evidence adduced at trial is set forth in the trial court's memorandum opinion as follows: On February 11, 1991, Metropolitan Police officers investigating a suspected male prostitution ring were working undercover in a homosexual bar. Officer Matthew Earls approached Paul Gardner[3] and told him that his friend, Officer Anthony Cesaro, who was posing as a visiting businessman, was looking for male prostitutes. Officer Earls then introduced the two men. Although he walked away from Gardner and Cesaro, Earls remained in the bar with at least one other undercover officer. Officer Cesaro discussed with Gardner the type and cost of sexual services available. Officer Cesaro then observed Gardner make several telephone calls, but he did not overhear the conversations.
Subsequently, each of the appellants and two other men entered the bar and spoke separately with Gardner, who then introduced each, in turn, to Officer Cesaro. Officer Earls testified that he observed appellants and the two other men separately approach Cesaro and briefly converse with him. Cesaro testified that his conversation with each appellant was essentially the same. That is, he asked each if seventy-five dollars was sufficient payment and then determined whether each appellant's preference was for "top or bottom." According to Officer Cesaro's testimony, Bates said his services were restricted to "[t]op only;" Phillip Moore offered "[a]nything you want;" and Joseph Moore said he was "versatile."
After the conversations, Officer Cesaro gave a prearranged signal indicating that the "cases had been made." Officer Earls and other undercover officers in the bar then arrested the five men who had spoken with Officer Cesaro, including appellants.
Detective Mark A. Gilkey, the government's expert witness in terminology and modus operandi used by homosexual prostitutes in the District of Columbia, testified that the expression "top or bottom" refers to the respective positions of inserter and receptor in anal intercourse and is widely known among homosexual prostitutes.

II.
Appellants argue that the government did not corroborate Officer Cesaro's testimony and, therefore, failed to meet its burden of proof for conviction. They cite the testimony of Officers Earls and Cesaro, who stated that none of the appellants' separate conversations with the police officers or with Gardner were overheard.
The trial court ruled, however, that the testimony of Officer Cesaro was sufficient because it was corroborated by the testimony of Officer Earls. Earls testified that after he introduced Officer Cesaro to Gardner, he "maintained [his] presence [at a table] in the lower bar area...." From there, he said, he "saw several individuals [including the three appellants, Gardner and Phillips] approach the officer...." Earls testified that each appellant approached Cesaro at "individual, different times" and that "each conversation ... took a few minutes." He added that Gardner was not present when each of the appellants approached Officer Cesaro.
The court relied, as do the appellants, on Kelly v. United States, 90 U.S.App.D.C. 125, 130, 194 F.2d 150, 155 (1952), which required corroboration for proof of homosexual solicitation, and Griffin v. United States, 396 A.2d 211 (D.C.1978), which relied on Kelly. The Court held: "Officer Earls' eye-witness testimony provides the necessary corroboration because it affirmed `the circumstances surrounding the parties at the time [of the encounter] such as presence at the alleged time and place and similar provable circumstances'" (citing *1135 Kelly, supra, 90 U.S.App.D.C. at 130, 194 F.2d at 155).
In our view, the court and the appellants incorrectly relied on Kelly and Griffin with regard to the corroboration requirement. The controlling law is set forth in this court's en banc decision in Gary, supra, 499 A.2d at 833, which decisively and prospectively "abolish[ed] the [corroboration] requirement entirely" in prosecution of "all sex offenses"[4] without regard to the sex or age of the victim or perpetrator[5] (emphasis added). Solicitation for homosexual prostitution is manifestly a sex offense. Kelly, supra, 90 U.S.App.D.C. at 128, 194 F.2d at 153, states: "The [homosexual solicitation] case before us lies in a field in which our courts have traditionally been unusually skeptical toward the accusation. This has been true of all the so-called sex-offenses." (emphasis added). See also Wilson v. United States, 106 U.S.App.D.C. 226, 271 F.2d 492 (1959) (quoting the same language).
Historically, the courts' skepticism toward accusations of sex offenses  spanning the gamut from rape to sodomy  can be traced back to late 17th-century England. Kelly, supra, 90 U.S.App.D.C. at 128, 194 F.2d at 153. Prior District of Columbia law was in accord with the traditional doctrine requiring corroboration for conviction in sex offense cases ("the corroboration doctrine"). See, e.g., Kidwell v. United States, 38 App.D.C. 566, 573 (1912) (the earliest sex offense case we have been able to find which discusses the corroboration requirement in this jurisdiction). See also Ewing v. United States, 77 U.S.App. D.C. 14, 16-17, 135 F.2d 633, 635-36, (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943).
In recent years, however, the corroboration doctrine in the District of Columbia, and in general, has gradually eroded. See Arnold v. United States, 358 A.2d 335, 342-43 (D.C.1976) (en banc). In 1976, this court carved out a major exception by abrogating the rule that the testimony of a mature female victim of rape or its lesser included offenses must be corroborated. Id. at 344. Thereafter, in 1982, we held that our decision in Arnold extended to cases involving the crime of assault with intent to commit sodomy perpetrated against a mature female. Sweet v. United States, 449 A.2d 315 (D.C.1982). In 1985, the Council of the District of Columbia created another major exception to the corroboration requirement in sexual assault cases where the complainant was a child.[6] D.C.Code § 23-114 (1989). Finally, in Gary, supra, 499 A.2d at 833-34, we completely eliminated the corroboration requirement for prosecution of all sex offenses,[7] which, as stated previously, encompasses the offense of solicitation for homosexual prostitution. Kelly, supra, 90 U.S.App.D.C. at 128, 194 F.2d at 153.
Thus, we hold that the government had no burden to corroborate Officer Cesaro's testimony, because the corroboration requirement no longer exists in this jurisdiction.

III.
Appellant Joseph Moore argues that the introduction, over objection, of hearsay testimony by Officer Earls concerning his conversation with Paul Gardner denied him a fair trial. Specifically, Officer Earls testified: "I met Mr. Gardner in the bar ... I approached him and told him that I had a friend of mine who was looking for these *1136 prostitutes. He stated that it would be no problem, let me meet [him]. I introduced him to the officer[] and that was it." Although the trial judge allowed this testimony by Officer Earls, he, nevertheless, recognized it as hearsay, and stated repeatedly in open court and in his memorandum that he did not consider it in finding appellants guilty. Therefore, the judge's actions were consistent with the well-recognized "presumption that a trial judge, in deciding a case without a jury, will disregard any inadmissible evidence and any improper argument...." Singletary v. United States, 519 A.2d 701, 702 (D.C.1987); see Harris v. Rivera, 454 U.S. 339, 346, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). We find no error.
What the judge relied on was evidence that
late at night in a bar, each of the codefendants, shortly after his arrival, was hurriedly introduced by Gardner to a stranger appreciably older than himself. In addition, ... a kind of stichomythia[8]... then occurred between each defendant and the stranger. An offer of money was bluntly made by the undercover agent and unhesitatingly accepted by each co-defendant. Elliptical reference was then made to "top" or "top or bottom." In each instance, the reference was immediately understood....
Under the circumstances of this case the meretricious nature of the transaction, as well as that of the consideration contemplated, cannot be reasonably disputed. All facets of the encounters indicate[d] that only sexual services were what was being negotiated for money. In blunt, businesslike fashion, an offer of [seventy-five dollars] was, without discussion or inquiry, accepted as a satisfactory amount and a range of services was plainly identified.

IV.
Appellant Philip Moore challenges the sufficiency of the evidence to support a finding that he knew the phrase "top or bottom" meant sexual acts as required by D.C.Code § 22-2701(a). The record reveals that Officer Cesaro testified that he asked appellant Phillip Moore whether he "liked top or bottom," to which appellant replied, "anything [you] want." Moore testified that he interpreted the phrase "top or bottom" to refer to whether an individual is a passive or aggressive person in the context of a homosexual relationship; on the contrary, Detective Gilkey, the government's expert, testified that the phrase, which is widely known among homosexual prostitutes, refers to the respective positions of inserter and receptor in anal intercourse. Moore argues on appeal that while this particular phrase may be familiar to homosexual prostitutes, there is no evidence to suggest that it is known to homosexuals who are not prostitutes. He also contends that the government presented no evidence that he was a homosexual prostitute.
As the trier of fact, the court resolved the conflicting testimony, credited the testimony of both officers, and found that Phillip Moore knew what the phrase "top or bottom" meant. The court's findings are neither plainly wrong nor unsupported by the record, and we will not disturb them. D.C.Code § 17-305(a) (1989); Grogan v. United States, 435 A.2d 1069, 1071 (D.C. 1981); see also Blyther v. United States, 577 A.2d 1154, 1158 n. 3 (D.C.1990).
For the foregoing reasons, the judgments appealed from hereby are
Affirmed.
NOTES
[1] Corroboration is not required to sustain a conviction for heterosexual prostitution in the District of Columbia. See Garrett v. United States, 339 A.2d 372, 373 (D.C.1975); Wajer v. United States, 222 A.2d 68, 69 (D.C.1966); Parker v. United States, 143 A.2d 98, 99 (D.C.1958); Price v. United States, 135 A.2d 854, 855-56 (D.C.1957). See also Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917).
[2] D.C.Code § 22-2701(a) (1989) states in relevant part:

It shall not be lawful for any person to invite, entice, persuade, or address for the purpose of inviting, enticing, or persuading, any person or persons in the District of Columbia for the purpose of prostitution [which is defined as involving the exchange of sexual acts for a fee in D.C.Code § 22-2701.1(1)] or any other immoral or lewd purpose....
[3] Paul Gardner, a/k/a Paul Herrington, another defendant in this case, failed to appear for trial. The fifth co-defendant, Edward Phillips, was also absent from the trial.
[4] While the facts in Gary differ from those in the instant case, we are persuaded that the rationale of Gary applies to the offense of homosexual prostitution. Cf. Sweet v. United States, 449 A.2d 315, 321 (D.C.1982).
[5] Gary further abolished the corroboration requirement in cases "where the sexual nature of the touching makes it an assault." 449 A.2d at 834. See Beausoliel v. United States, 71 App.D.C. 111, 107 F.2d 292 (1939).
[6] D.C.Code § 23-114 (1989) states: "For purposes of prosecutions brought under title 22 of the D.C.Code, independent corroboration of the testimony of a child victim is not required to warrant a conviction."
[7] As we stated in Gary, 499 A.2d at 834, the District of Columbia now has "an homogeneous rule with respect to corroboration in sex offenses." See United States v. Sheppard, 186 U.S.App.D.C. 283, 569 F.2d 114 (1977).
[8] According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2240 (1986), "stichomythia" is defined as "dialogue ... delivered in alternate lines."