**Melvyn A. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 90–CF–566, 91–CO–1406.**

District of Columbia Court of Appeals.

Argued March 24, 1993.
Decided Feb. 3, 1994.

Michael L. Spekter, Washington, DC, appointed by this court, for appellant.

Kathleen S. Davies, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY, STEADMAN and SULLIVAN, Associate Judges.

PER CURIAM:

This is an appeal from appellant's conviction following a non-jury trial for possession with intent to distribute heroin, in violation of D.C.Code § 33–541(a)(1) (1993 Supp.), and

from the denial of his motion for a new trial. Although appellant presents us with numerous issues on appeal, only one issue requires plenary discussion, namely, whether the trial court committed reversible error by considering appellant's potential punishment in concluding that he was not a credible witness.[1] We hold that the court did not and accordingly affirm.

### I.

The government's evidence at trial showed that Detective Gary O'Neal was on duty at approximately 7:00 p.m. on August 22, 1989, in an alley behind 146 "L" Street, Southeast, an area described as an "open air drug distribution center." Detective O'Neal observed appellant standing in a walkway holding several blue ziplock packets of white powder in the palm of his outstretched hand while a female, later identified as Ms. Robin Lyles, reached within one inch of appellant's hand. Suspecting a drug transaction, although he could not determine whether Lyles was moving her hand toward or away from appellant's hand, Detective O'Neal identified himself and demanded that appellant and Lyles emerge from the walkway. Lyles fled and appellant dropped his hand to his side. Detective O'Neal struggled with appellant and eventually recovered from appellant's hand nine packets of powder which field-tested positive for heroin. Officer Kemper Agee then searched appellant and found one packet of a white substance that tested positive for crack cocaine and $74.00 in cash in a bicycle pouch which was strapped around appellant's waist.

Officer David Stroud was qualified as an expert in street trafficking and packaging of illicit drugs. He testified that the nine packets of heroin had a street value of $180.00 as packaged, but the same quantity of heroin could be purchased in bulk for $60.00. He also testified that the quantity, variety, and value of the drugs were more consistent with distribution than with personal use. Further, Officer Stroud opined that the maximum amount of heroin an addict would use in a day would be six packets; and that a

---

1. Appellant's claims of insufficient evidence to sustain his conviction, ineffective assistance of counsel, and error on the part of the trial court in admitting expert testimony are without merit.

heroin addict would buy no more than two bags of heroin at one time.

Appellant was the sole defense witness. He testified that he was a heroin addict and that he had purchased the drugs from Ms. Lyles in exchange for his girlfriend's camcorder; further, he said that he intended to use all of the drugs within twenty-four hours. Moreover, he testified that he had two prior convictions for distribution of drugs, had been sentenced under the addict exception,[2] had previously participated in drug programs, and had been hospitalized because of his long-standing drug addiction.

In rendering its decision finding appellant guilty of possession with intent to distribute heroin, the trial court stated:

> I have been sitting here wondering why Mr. Johnson would go to trial in this case and the minute I hear about his prior record I say, uh-huh, he wants to avoid a mandatory minimum.

> \* \* \* \* \* \*

> I don't believe we've got any real doubt. I think I am entitled to take into account the defendant's desire to avoid the mandatory minimum sentence in evaluating his credibility. That does not substitute evidence but it does give him a very powerful motivation not to tell the truth on this specific narrow point of intent to distribute.

Following appellant's conviction and the trial court's imposition of the mandatory-minimum sentence, this appeal ensued.

## II.

Appellant contends that the trial court, sitting as the trier of fact, was bound by the same prohibition as a jury not to consider potential punishment in assessing his credibility as a witness. It is, of course, true that as a general principle, "the jury is to determine guilt or innocence on the evidence before it and should not consider the possibilities of punishment in its deliberations ..." *Brown v. United States,* 554 A.2d 1157, 1160 (D.C.1989) and cases cited therein; *see also* Criminal Jury Instructions for the District of Columbia, No. 2.74 (4th ed. 1993).[3] The reason for such a general principle is, at bottom, one of relevance. The jury's role is that of the determiner of guilt or innocence, an issue upon which the possible punishment for the crime casts no light whatever. As the court said in *United States v. Patrick,* 161 U.S.App.D.C. 231, 234, 494 F.2d 1150, 1153 (1974): "[T]he jury's only function is to assess guilt or innocence on the basis of their independent view of the evidence. Sentencing decisions, on the other hand, are within the exclusive province of the court...." The court then went on to quote from *Miller v. United States,* 37 App.D.C. 138, 143 (1911):

> it is error for the court to put before the jury any considerations outside the evidence that may influence them, and lead to a verdict not otherwise possible of attainment. The deliberations of the jury should revolve around the evidence before them, and should be uninfluenced by other considerations or suggestions.

But the situation in the case before us was different. The defendant had taken the stand and testified. His credibility was at issue, to be determined by the finder of fact. Plainly, anything that might sway the truthfulness of his testimony was a relevant

---

2. The addict exception is codified at D.C.Code § 33-541(c)(2) (1993 Supp.) which provides in pertinent part as follows:

   [T]he court may, in its discretion, waive the mandatory-minimum sentencing provisions ... when sentencing a person who has not been previously convicted ... for knowingly or intentionally ... distributing, or possessing with intent to ... distribute a controlled substance ... if the court determines that the person was an addict at the time of the violation ..., and that such person ... distributed or possessed with intent to ... distribute a controlled substance ... for the primary purpose of enabling the offender to obtain a nar-
cotic drug or abusive drug which he required for his personal use because of his addiction to a narcotic drug or an abusive drug.

3. Instruction 2.74 states:

   The question of possible punishment of the defendant in the event of conviction is no concern of [the jury] and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of conviction rests exclusively with me. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

fact, including the prospect of incarceration. As has been well-established for many years, the bias of a witness is "always relevant." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *Springer v. United States*, 388 A.2d 846, 855 (D.C. 1978) ("The exposure of bias or partiality as a motivational factor may be ... a crucial determinant in the jury's assessment of the trustworthiness of a witness. Thus, 'bias is always a proper subject of cross-examination,'" quoting *Hyman v. United States*, 342 A.2d 43, 44 (D.C.1975)).[4] *Cf.* Criminal Jury Instructions for the District of Columbia, No. 2.28 (4th ed. 1993) (in weighing defendant's testimony, jury "may consider the fact that the defendant has a vital interest in the outcome of this trial"). The nature of the punishment faced by the defendant is thus a relevant fact in assessing his motive to lie: a potential $10 fine is different from the prospect of a death penalty.

Therefore, if a jury were not to be told of the precise punishment potentially faced by the defendant, the reason would not be that of the general proscription against such evidence. Rather, it would presumably be based on a determination that, although relevant, its probative value is substantially outweighed by the danger of unfair prejudice, under the principle that applies to any evi-

dentiary decision in jury trials. *See, e.g., District of Columbia v. Cooper*, 483 A.2d 317, 323 (D.C.1984); Fed.R.Evid. 403.

■■■■ However, here we are dealing with a bench trial. It is standard doctrine that in such circumstances, a trial judge is presumed to know of the proper use of evidence. *See, e.g., Moore v. United States*, 609 A.2d 1133, 1136 (D.C.1992) (acknowledging "the well-recognized 'presumption that a trial judge, in deciding a case without a jury, will disregard any inadmissible evidence and any improper argument,'" citing *Singletary v. United States*, 519 A.2d 701, 702 (D.C.1987)). There can be no real concern that a trial judge will use the evidence of the length of punishment to which a defendant is subject in any improper way in his deliberations. Here, it is plain that the trial judge considered it only as to the defendant's credibility.[5]

■■■ In this posture, we see no need to determine whether the evidence would, of necessity, be excludable in a jury trial as unduly prejudicial.[6] It would be a feckless procedure, on some principle of total equivalency, to require a trial court upon each proffer of clearly relevant and otherwise admissible evidence in a bench trial to engage in the hypothetical process of determining whether, in a jury trial, that evidence would

---

**4.** A portion of *Springer* not pertinent here has been overruled. *See Bassil v. United States*, 517 A.2d 714, 717 n. 5 (D.C.1986).

**5.** The following colloquy during closing argument shows the trial court's awareness of the proscription against a factfinder's indiscriminate consideration of punishment.

THE COURT: Let me ask you this question, Mr. Klingenstein, before I hear from Ms. Borecki. If this case were tried to a jury would you be free to argue to the jury that they should disbelieve the defendant because of his motivation to avoid [a] mandatory minimum, having been disqualified by his prior record from the addict exception? Would you be permitted to argue that to the jury in light of the fact that we tell the jury not to take punishment into account?

MR. KLINGENSTEIN: Your Honor, I might be able to argue that but I would not. I'm not confident enough standing here that I could argue that and I would not.

\* \* \* \* \* \*

THE COURT: I don't know. I mean, it's an obvious factor that leaps to mind for the Court

but I don't know that I should consider it if the jury couldn't consider it and I'm not at all sure that you would be free to make that argument to a jury.

\* \* \* \* \* \*

MS. BORECKI: With regard to the last point, Your Honor, I would simply note that the Court is the trier of facts in this case, as obviously, with a jury. And it would appear to me in answering your question that it would be improper for the Court to take all that into consideration with regard—that is the potential punishment.

Thus, we do not understand the trial judge to have operated from any firm conclusion that in a jury trial, the evidence of the mandatory minimum would necessarily have been excluded by him, despite the government's contrary premise in its scanty discussion of the issue in its brief.

**6.** More precisely, the inquiry would be whether, on the specific facts here, a trial court would abuse its discretion in determining that the probative value of the information was not substantially outweighed by the danger of unfair prejudice.

be excluded under the principle of outweighing prejudice or any of the other doctrines controlling the presentation of evidence to juries, such as confusion of the issues, misleading nature, undue delay, waste of time, or needless presentation of cumulative evidence, and to require an appellate court to review this hypothetical determination.[7] We know of no authority to this effect and none is cited to us. We decline to adopt such a rule here.

Accordingly, the judgment appealed from is

*Affirmed.*

SULLIVAN, Associate Judge, dissenting:

I respectfully dissent from the opinion of the court. I would hold that the trial court erred in considering potential punishment in assessing appellant's credibility as a witness and that the error was not harmless under the circumstances. Accordingly, I would reverse appellant's conviction for possession with intent to distribute heroin and remand for a new trial.

In rendering its decision finding appellant guilty of possession with intent to distribute heroin, the trial court, *sua sponte*, stated:

I have been sitting here wondering why Mr. Johnson would go to trial in this case and the minute I hear about his prior record I say, uh-huh, he wants to avoid a mandatory minimum.

\* \* \* \* \* \*

I don't believe we've got any real doubt. I think I am entitled to take into account the defendant's desire to avoid the mandatory

minimum sentence in evaluating his credibility. That does not substitute evidence but it does give him a very powerful motivation not to tell the truth on this specific narrow point of intent to distribute.

The government concedes, as it must, that as a general principle, "the jury is to determine guilt or innocence on the evidence before it and should not consider the possibilities of punishment [*including mandatory penalties*] in its deliberations...." *See Brown v. United States,* 554 A.2d 1157, 1160–61 & n. 3 (D.C.1989), and cases cited therein; *see also* Criminal Jury Instruction for the District of Columbia, No. 2.74 (4th ed. 1993).[1] The government attempts to rationalize and justify the trial court's use of appellant's potential punishment, however, by arguing that because the trial court is knowledgeable about the sentencing laws, it is capable of refraining from any improper use of that information. This argument, however, is belied by the trial court's statements to the contrary: that the prospect of serving a mandatory-minimum sentence provided appellant with a "powerful motivation not to tell the truth," and that the trial court "was entitled" to take that fact "into account" in assessing appellant's credibility notwithstanding the fact that the government *never* asked the trial court to do so. I am aware of no authority and, indeed, neither my colleagues nor the government has cited any authority, to support this position.[2]

To the contrary, the Supreme Court has held that trial judges are presumed to "follow their own instructions when they are acting as factfinders." *Harris v. Rivera,* 454

---

**7.** The hypothetical nature of such an inquiry is further highlighted by the realistic situation that a bench trial may well involve a different dynamic and process from a jury trial of the same offense. A defendant opting for a bench trial simply must take these differences into account. We do not deal here with a question of the use in a bench trial of evidence that would clearly be prohibited by some inflexible evidentiary rule in a jury trial.

**1.** Instruction 2.74 states:

The question of possible punishment of the defendant in the event of conviction is no concern of the jury and should not enter into or influence your deliberations in any way. The

duty of imposing sentence in the event of conviction rests exclusively upon the Court [,and the Court has wide latitude in such matters]. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

**2.** The colloquy during closing argument between the court and counsel showed the trial court's keen awareness of the proscription against a factfinder's consideration of punishment. Nevertheless, the trial court proceeded to consider appellant's potential punishment in assessing his credibility. *Ante* at 981, note 5.

U.S. 339, 346, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981). For a trial court to consider evidence which a jury could not consider is repugnant to the long-standing principle of law that a trial court, sitting as the finder of fact, and a jury, are bound by the same evidentiary and legal standards. *See Turman v. United States,* 555 A.2d 1037, 1038 (D.C.1989) ("[J]ust as a jury may only decide a case based on the facts properly presented to it during trial, so too must a judge, sitting as the trier-of-fact, base his or her determinations solely on the evidence presented in the case at bar." (citations omitted)); *J.D. Hedin Constr. Co. v. F.S. Bowen Elec. Co.,* 106 U.S.App.D.C. 386, 388, 273 F.2d 511, 513 (1959) ("The jury must, after all, act only on proper instructions. The judge sitting as trier of the facts must act on a sound legal and evidentiary basis...."); *cf. United States v. Palermo,* 259 F.2d 872, 882 (3d Cir.1958) ("there is no difference between a trial judge formally instructing the jury as to what he thinks the applicable law to be and, in effect, instructing himself similarly in a non-jury case"); *Wilson v. United States,* 250 F.2d 312, 324 (9th Cir.1957) (same), *reh'g denied,* 254 F.2d 391 (9th Cir.1958).

Having served as a trial judge for a number of years, I am acutely aware that a judge may become aware of inadmissible evidence during the course of a trial. *See Moore v. United States,* 609 A.2d 1133, 1136 (D.C. 1992). In such circumstances, however, the judge is not at liberty to base rulings on such evidence. *Id.* (the trial court repeatedly stated that it would not consider hearsay evidence in finding appellants guilty). Rather, the presumption is that a " 'trial judge in deciding a case without a jury, will disregard any inadmissible evidence and any improper argument.' " *Id.* (quoting *Singletary v. United States,* 519 A.2d 701, 702 (D.C.1987)); *see also Harris, supra,* 454 U.S. at 346, 102 S.Ct. at 465 ("In bench trials, judges routinely hear inadmissible evidence that they are

presumed to ignore when making decisions"). Regrettably, this did not occur here.

Appellant's testimony on direct examination that he had two prior convictions for distribution of drugs, and had been sentenced previously under the addict exception, alerted the trial court that he was subject to a mandatory-minimum sentence if convicted. Unquestionably, prior convictions of a defendant can be used by the trier of fact to assess credibility. *See* D.C.Code § 14–305(b)(1) (1981 and 1992 supp.);[3] *Jones v. United States,* 579 A.2d 250, 254 (D.C.1990). Moreover, a trier of fact may take into account a defendant's interest in the outcome of a trial. *See White v. United States,* 582 A.2d 774, 780 (D.C.1990), *rev'd in part on other grounds,* 613 A.2d 869 (1992) (en banc).[4] A trier of fact—judge or jury—may not, however, use the potential punishment of a defendant for the purpose of assessing that person's credibility. *See* Criminal Jury Instruction for the District of Columbia, No. 2.74, *supra* note 1; *Anderson v. United States,* 326 A.2d 807, 811 (D.C.1974) (the "question of possible punishment ... is no concern of the jury") (quoting Criminal Jury Instruction for the District of Columbia, No. 2.71 (2d ed. 1972)), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). In the present case, because "[I] cannot presume that [the trial judge followed the correct legal standard] when the record affirmatively indicates the contrary," *Hightower v. United States,* 117 U.S.App.D.C. 43, 50, 325 F.2d 616, 623 (Fahy, J., dissenting), I would hold that the trial court erred by considering appellant's potential punishment in concluding that he was not a credible witness.

"[I]t is clear that a judge sitting without a jury must be reversed if he shows a fundamental misunderstanding of the evidence or of the governing law." *Hightower, supra,* 117 U.S.App.D.C. at 46, 325 F.2d at 619. "[W]here the record shows a prejudicial error of law by the court in reaching the finding, it may be set aside." *Hedin, supra,* 106

---

3. Section 14–305(b)(1) states, in pertinent part: Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered[ ]....

4. The record is clear that the trial court did not expressly consider the defendant's convictions in assessing his credibility as a witness. Nor did the trial court state that it considered appellant's interest in the outcome of the case as a factor affecting his credibility.

U.S.App.D.C. at 388 n. 2, 273 F.2d at 513 n. 2. If a trial judge's "statements and actions indicate that he did not [act on a sound legal and evidentiary basis], correction must follow." *Id.* at 388, 273 F.2d at 513.

In *Hill v. United States,* 512 A.2d 269, 278 (D.C.1986), we held that the trial court's error was harmless and did not require reversal where the trial court's *sua sponte* reference to the defendant's prior convictions did not prejudice the defendant because his credibility was not material to the suppression issue. In the present case, however, credibility was a critical issue. Appellant testified that he was purchasing heroin to support his heroin addiction and claimed that the quantity of drugs seized from him would satisfy his addiction for only twenty-four hours. Detective O'Neal testified that appellant was selling drugs, and Officer Stroud testified that the amount, variety, and packaging of the drugs indicated that appellant was a distributor. The trial court candidly acknowledged that the evidence was not "literally clear" whether appellant was buying or selling drugs. In this regard, the trial court stated:

> Well, I find this to be a somewhat more troubling case than I expected it to be. For one thing, Mr. Johnson has given a rather plausible explanation as to why he would be using that kind of pouch and he has come up with an explanation[ ] which, if accepted at face value, do[es] explain away a major portion of the Government's evidence with respect to matters that would support an inference of intent to distribute.

In view of the close call on the question of credibility, the use of the incorrect standard by the trial court in assessing appellant's credibility "tainted the trial process," in my view, and constituted reversible error. *See Turman, supra,* 555 A.2d at 1039. In *Turman,* this court reversed appellant's conviction because the trial court partially relied on an improper consideration in assessing a witness's credibility. The trial judge in *Turman,* likewise presiding over a non-jury trial, stated during the trial that he knew a witness to be credible from prior appearances before him in other cases. *Id.* at 1038. In reversing the conviction, this court held that "it was inappropriate for the court to base its determination on its evaluation of the [witness'] credibility in other cases." *Id.* We stated:

> It is apparent that the trial court did not rely solely on the officer's prior court appearances when it determined her to be a credible witness. *Nevertheless, a trial court must always be cautious in its language and conduct.* To announce to the parties that the court had previously gained a good impression of a witness' credibility, and then to proceed to weigh that witness' credibility in the case at bar without assuring the parties that the previous assessment would play no role in judging the pending case, created an appearance of partiality, if not an implication of actual partiality, which tainted the trial process.

*Id.* at 1039 (citation omitted) (emphasis added). The persuasive rationale of *Turman* is applicable in the present case.

Accordingly, I would hold that the trial court's express use of an incorrect legal standard, i.e., appellant's potential punishment in assessing his credibility, was not harmless and, thus, appellant's conviction should be reversed. *See id.; but cf. Moore, supra,* 609 A.2d at 1136 (no error where judge states on record that he would not consider inadmissible evidence against defendant). In reaching my conclusion, I merely acknowledge precedent of long-standing that a trial judge presiding as factfinder is bound by the same evidentiary and legal standards as a jury. *See Turman, supra,* 555 A.2d at 1038; *Hedin, supra,* 106 U.S.App.D.C. at 388, 273 F.2d at 513; *see also Harris, supra,* 454 U.S. at 346, 102 S.Ct. at 464; *Hightower, supra,* 117 U.S.App.D.C. at 46, 325 F.2d at 619. If a judge sitting as factfinder were allowed to consider information that a jury could not consider, and then factor that forbidden information into the decision-making process, there would hardly exist any incentive for a litigant in pursuit of justice to opt for a non-jury trial.

One additional point made by the majority prompts one last comment by me. In the majority opinion, *ante* at 981, my colleagues state that "[t]he nature of the punishment

faced by the defendant is thus a relevant fact in assessing his motive to lie; a potential $10 fine is different from the prospect of a death penalty." At what measuring point, and under what circumstances, I wonder, will the dollar amount of the fine or the length of a potential sentence determine when a defendant has a motive to lie?

Accordingly, I respectfully dissent from the opinion of the court. I would reverse appellant's conviction for possession with intent to distribute heroin and remand for a new trial.