**In re N.D.**

**K.D., Appellant.**

**No. 00–FS–1054.**

District of Columbia Court of Appeals.

Submitted Nov. 4, 2003.
Decided Oct. 12, 2006.

Marion E. Baurley, appointed by the court, was on the brief for appellant.

Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward A. Schwab, Deputy Attorney General, and Sheila Kaplan, Assistant Attorney General, were on the brief for appellee District of Columbia.

Ardelia Davis, guardian ad litem, Alexandria, VA, filed a statement in lieu of brief for appellee N.D.

Thomas C. Devlin, filed a statement in lieu of brief for appellee E.D.

Before RUIZ, Associate Judge, and KING and TERRY, Senior Judges.*

TERRY, Senior Judge:

Appellant K.D. brings this appeal from the trial court's decision to revoke her protective supervision of her daughter N.D.[1] She presents two claims of error. First, appellant contends that there was insufficient evidence to permit the trial court to find that she had violated the order granting protective supervision. Second, she maintains that she was denied due process of law because the Corporation Counsel[2] was allowed to make an oral motion to revoke protective supervision instead of being required to file a written motion. We find no error, and accordingly we affirm the trial court's order.

I

In May 1998 the District of Columbia filed a petition stating that eight-year-old N.D. was a neglected child under D.C.Code § 16–2301(9)(B) and (E) (1997). The petition was based on a report that N.D.'s ten-year-old sister had been sexually abused by her mother's live-in boy friend, K.W. On September 2, 1998, the parties stipulated that N.D. and her sisters were neglected children. The two youngest sisters, who were then seven and four years old, were immediately placed under protective supervision with K.D., their mother, on condition that K.W. "will have no contact with any of the respondents while they are in her care," and that "such contact may be grounds for revocation of the order placing the respondents in her

---

* Judge Terry was an Associate Judge of the court at the time this case was submitted. His status changed to Senior Judge on February 1, 2006.

1. K.D. has five daughters, all of whom were the subject of neglect petitions, but this appeal concerns only N.D. Other appeals involving the other four children were dismissed on August 23, 2002. A separate case involving only the two youngest children was recently decided by this court in an unpublished Memorandum Opinion and Judgment. *In re W.M.A. (K.D., Appellant)*, Nos. 04–FS–1077 and 04–FS–1078, 907 A.2d 800 (D.C.2006).

2. While this appeal was pending, the title of the District of Columbia's chief attorney was changed. The Corporation Counsel is now officially known as the Attorney General for the District of Columbia. *See* Mayor's Order No. 2004–92 (May 26, 2004), 51 D.C. Register 6052.

care." K.D. agreed to these conditions. N.D., then nine years old, was placed in foster care. About a year later, however, N.D. was removed from foster care and placed under protective supervision with K.D.[3]

At a status hearing in May 2000, N.D.'s guardian *ad litem* informed the trial court that K.W. was still living with K.D. At some point during the hearing, the Corporation Counsel made an oral motion requesting that the mother's protective supervision of N.D. be revoked. When the hearing resumed the next day, K.D.'s counsel asked that the government file a written motion and that an evidentiary hearing be held if the court was considering such a revocation. The court responded by saying that counsel for the District "yesterday told me that she wished to revoke protective supervision. No written motion has been filed." Without any further objection to the oral motion or any assertion that more time was needed, K.D.'s counsel agreed to the scheduling of an evidentiary hearing a week later.[4]

The District's first witness at the evidentiary hearing was Marlene Jackson, a social worker with Family and Child Services. Ms. Jackson testified that during a case conference K.D. said "yes" when her supervisor asked if K.W. was living in her home, and that the other children also stated that K.W. was living in the home. K.D.'s counsel made a hearsay objection, which the court overruled. Ms. Jackson

then informed the court that she had not spoken with the children, and that the children's statements had been relayed to her by Lillian Wilkins, a foster mother to one of N.D.'s siblings.

Lillian Wilkins then testified that during the previous week she had spoken with N.D. about whether K.W. was living with her mother. K.D.'s counsel made another hearsay objection, which again was overruled. Ms. Wilkins then went on to state that N.D. told her that K.W. was living in the home.

On the second day of the hearing, K.D.'s counsel renewed her hearsay objections from the previous day. The court responded, "I am able to parse out what can be attributed or what can be used in a motion to revoke."[5] The District then called Thomas Fulford, an outreach worker from the Institute for Responsible Fatherhood and Family Revitalization, and E.D., N.D.'s father, to testify. Both Mr. Fulford and E.D. testified that they had encountered K.W. at K.D.'s home during an unannounced visit. Moreover, they both stated that K.W. was in the home while N.D. was there.

On the third day of the hearing, the court conducted an informal interview of N.D. Before the interview began, the following exchange took place between the court and K.D.'s counsel:

> THE COURT: And, counsel, I'm inclined not to put [N.D.] under oath but to just

3. The record does not indicate the exact date N.D. was placed under protective supervision. However, on November 9, 1999, the court ordered that N.D.'s unsupervised and overnight visits with her mother would gradually become "protective supervision with mother no later than December 23, 1999."

4. The evidentiary hearing eventually lasted four days.

5. The court made this comment in reference to the fact that the evidentiary hearing was a "blended hearing" which addressed both the motion to revoke protective supervision of N.D. and the District's petition to place the two youngest children in foster care. The neglect cases dealing with those two children had been closed in 1999, and the District had to file a new petition to re-open their cases before the trial court could order that they be placed in foster care.

sit with her and talk right here in the jury box.

Ms. BLUME [K.D.'s counsel]: Well, Your Honor, one thing that I would like to have you discuss with her is if she understands the importance of telling the truth.

THE COURT: I intend to do that.

Ms. BLUME: Okay.

When N.D. was brought into the courtroom, the judge asked her if she understood the importance of telling the truth, and N.D. replied that she did. The judge then asked N.D. about K.W.'s presence in her mother's home. Despite being confused about the amount of time that she spent in foster care, N.D. repeatedly stated that K.W. was living with her mother when she returned home after being in foster care.

On the fourth day of the hearing, the court heard closing arguments. Before beginning her argument, K.D.'s counsel had the following discussion with the court:

Ms. BLUME: Well, very briefly, Your Honor ... I want to focus my closing argument primarily on the testimony of [N.D.] because I believe you've heard— you've heard a lot of testimony and there's a lot of he said/she said. Who do you believe when you hear—

THE COURT: And just technically, I don't believe it was testimony because she was [not] under oath, but in reviewing her statement, I often slip into calling it testimony also.

Ms. BLUME: Her—her questioning by you that was not under oath. And I think there were a lot of points of concern here, and I want to bring them to the Court's attention.

K.D.'s counsel then made her argument, which focused on a comparison of the statements made by N.D. with the testimony given by the other witnesses.

After hearing closing arguments from both sides, the court decided to revoke K.D.'s protective supervision of N.D. because K.D. had allowed K.W. to be in her home while N.D. was there. Finding the mother's testimony "not believable," "jumbled," and "confused," the court explained that it based its decision on the statements from N.D. and the testimony of Mr. Fulford and E.D.:

... I really found [N.D.] to be guileless. She didn't appear to be fabricating to me. ... I accept that she has or she may have a distorted concept about time, but as Ms. Blume points out ... the concept or her difficulty with time I don't think related to her ability to explain that since her return, [K.W.] has been there regularly.

... [E.D.] and Mr. Fulford explained the sequence of what happened when they got there, and I really accept their version as being the more accurate version. ... And the other witnesses really didn't have direct testimony.

## II

In a case tried by a judge without a jury, such as this one, when a claim of insufficient evidence is raised on appeal, the scope of this court's review is defined by D.C.Code § 17–305(a) (2001). That section states that "the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." *See, e.g., In re Ca.S.,* 828 A.2d 184, 188 (D.C.2003). Furthermore, this court "must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable

inferences." *In re T.M.*, 577 A.2d 1149, 1151 (D.C.1990) (citations omitted).[6]

■ Appellant argues that the trial court erred in relying on the testimony of Ms. Jackson and Ms. Wilkins because their testimony was based on hearsay. There are two reasons why this argument fails. First, when K.D.'s counsel renewed her hearsay objections, the court explained that it was "able to parse out what can be attributed or what can be used in a motion to revoke." This statement is fully consistent with controlling case law. This court has consistently recognized "a presumption that a trial judge, in deciding a case, will disregard any inadmissible evidence and any improper argument. . . ." *Singletary v. United States*, 519 A.2d 701, 702 (D.C.1987); *accord, e.g., Johnson v. United States*, 636 A.2d 978, 981 (D.C.1994); *Moore v. United States*, 609 A.2d 1133, 1136 (D.C.1992). The Supreme Court has held to the same effect. *Harris v. Rivera*, 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). Second, the trial court specifically said that it relied on the statements from N.D. and the testimony of Mr. Fulford and E.D. in reaching its decision, and that "the other witnesses really didn't have direct testimony." Given this statement, we conclude that even if the court erred in admitting the testimony of Jackson and Wilson (which we do not decide), any error was necessarily harmless.

■ Appellant also argues that the testimony given by Mr. Fulford and E.D. "falls short of establishing a violation of the protective supervision order." Again, appellant is wrong for two reasons. First, both Mr. Fulford and E.D. testified that they saw K.W. in the home when N.D. was there. This testimony, without more, was sufficient to establish a violation of the order. Second, the trial court specifically credited their testimony, stating, "I really accept their version as being the more accurate version." We have no ground for overturning this credibility finding. *See, e.g., In re S.G.*, 581 A.2d 771, 775 (D.C. 1990) ("[t]his court may not usurp the prerogative of the judge, as the trier of fact, to determine credibility and weigh the evidence").

■ Appellant also challenges the trial court's reliance on N.D.'s statements as unwarranted. She argues that the court should not have considered these statements because N.D. (1) "was not under oath," (2) "did not have a firm grasp of the concept of time," [7] and (3) "did not appreciate her duty to speak truthfully." We reject all three arguments.

■ First, appellant did not object to the trial court's decision not to place N.D. under oath.[8] K.D.'s counsel asked only

---

**6.** We reject appellant's argument that abuse of discretion is the proper standard of review. Appellant is not contesting the trial court's determination of what was in the best interest of N.D. *See, e.g., In re A.C.*, 597 A.2d 920, 926 (D.C.1991) (trial court's determination of what is in the best interest of the child is reviewed for abuse of discretion). Rather, her claim is that there was insufficient evidence to show that she violated the order placing N.D. in her care under protective supervision. *See In re S.S.*, 821 A.2d 353, 359 (D.C.2003) (although appellant framed the issue in terms of abuse of discretion, this court determined that her argument was "more ac-

curately characterized as a challenge to the sufficiency of the evidence").

**7.** Appellant bases this assertion on the fact that during the judge's questioning, N.D. "stated she had been living with a foster family for three years when she had in fact only been living with that family for a year and half."

**8.** Although appellant's counsel did mention that N.D. was not under oath during her closing argument, counsel did not object to the lack of an oath. Rather, counsel used the fact that N.D. was not under oath to mount a

that the court inquire whether or not N.D. understood that she should tell the truth, and the court did so. Appellant cannot now, on appeal, claim that N.D. should have been placed under oath or that it was error for the trial to consider N.D.'s statements. *See Brown v. United States*, 627 A.2d 499, 508 (D.C.1993) ("a [litigant] may not take one position at trial and a contradictory position on appeal" (citations omitted)). Moreover, even if appellant had objected to the court's failure to place N.D. under oath, the trial court has the power to "place appropriate limitations on the examination of the child witness in order to protect the child from emotional or psychological injury." *In re Jam. J.*, 825 A.2d 902, 912 (D.C.2003); *see also, e.g., In re S.C.M.*, 653 A.2d 398, 405 (D.C.1995) ("in all proceedings affecting the future of a minor, the decisive consideration is the best interests of the child").

Second, the trial court specifically said it did not believe that N.D.'s confusion about the length of time that she was in foster care affected her ability to testify that K.W. had been in her mother's home since she returned from foster care. N.D.'s failure to recall this particular fact does not affect the deference that we must give to the trial court's determination that N.D. was credible. *See In re S.G.*, 581 A.2d at 775 (upholding the trial court's determination that a child's testimony was credible even though it contained inconsistencies).

Finally, we must accept the trial court's determination that N.D. understood her duty to tell the truth and that she "didn't appear to be fabricating." *See, e.g., In re E.H.*, 718 A.2d 162, 169 (D.C.1998) ("An appellate court will not redetermine the credibility of witnesses where ... the trial court had the opportunity to observe their demeanor and form a conclusion." (citations omitted)). Appellant has not offered any reason why we should hold otherwise.

For all of these reasons, we reject appellant's challenge to the sufficiency of the evidence.

## III

Due process "requires 'notice and opportunity for hearing appropriate to the nature of the case.'" *Richard Milburn Public Charter Alternative High School v. Cafritz*, 798 A.2d 531, 541 (D.C. 2002) (citations omitted). Appellant contends that she was not given adequate notice because the government failed to file a written motion alleging specific violations of the order granting protective supervision.[9] She relies on Super. Ct. Negl. R. 24(b), which, at the time of the hearing,[10] stated in part:

> A proceeding to revoke an order entered pursuant to D.C.Code § 16–2320(a)(1) or (2)[11] shall be commenced by the filing of a motion to revoke by the Corporation Counsel.... The mo-

general attack on her credibility, comparing what N.D. said to the court with what the other witnesses had stated in their sworn testimony.

9. Appellant also argues that her due process rights were violated by the trial court's reliance on N.D.'s statements. Because this is essentially the same argument that she makes in challenging the trial court's consideration of those statements, which we have rejected in part II of this opinion, we need not address it further.

10. The Superior Court Neglect Rules were extensively revised and amended (and in large part renumbered) in 2004. Our citations to the Neglect Rules in this opinion, however, refer to the pre–2004 version, unless the context indicates otherwise.

11. D.C.Code § 16–2301(a)(2) authorizes the trial court to enter an order placing a child under protective supervision.

tion shall allege the specific violations of the order and shall be served upon the parties.[12]

When appellant's counsel learned of the Corporation Counsel's oral motion, she did not object, asking instead that an evidentiary hearing be held. Claims of error not raised in the trial court are reviewed only for plain error. *E.g., Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). To establish plain error, appellant "must demonstrate that the trial court's decision was 'plainly' or 'obviously' wrong and that the error was so serious that failure to correct it will result in a miscarriage of justice." *In re S.S.*, 821 A.2d at 358 (citations omitted). More specifically, she must show both that there was "error" and that the error was "plain." *See United States v. Olano*, 507 U.S. 725, 732–734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). An "error" has been defined by the Court in *Olano* as a "[d]eviation from a legal rule." *Id.* at 732–733, 113 S.Ct. 1770. Appellant has not shown, and cannot show, that the court's acceptance of the oral motion was an "error" under this definition because it was expressly authorized by a Superior Court rule. Neglect Rule 28(a), at the time of the hearing, stated that "[a] motion other than one made during a factfinding or other hearing shall be in writing *unless the judicial officer permits it to be made orally*" (emphasis added).[13] That is precisely what happened here: the judge "permit[ted]" the motion "to be made orally." Appellant cannot show that the asserted error was "plain," *i.e.*, "obvious" or "clear under current law," *id.* at 734, 113 S.Ct.

1770, because it was specifically permitted by "current law," namely, Rule 28(a). We are satisfied that there was no plain error, and indeed no error at all.

Furthermore, it is clear from the record that appellant's counsel knew that the District's motion to revoke protective supervision was based on the specific allegation that K.D. had allowed K.W. to be present in her home when N.D. was there. On the second day of the status hearing, K.D.'s counsel told the court that her client "denies that [K.W.] ... absolutely ... does not live there, and he has never been there when the children have been there," and offered to "dispute the statements made by [E.D.] and Mr. Fulford" that they had seen him there. K.D. herself was present in the courtroom when counsel made this statement. Since this happened a full week before the evidentiary hearing began, we can find no substance in K.D.'s present claim that she did not receive adequate notice of the District's reasons for seeking to revoke protective supervision.

IV

The order from which this appeal is taken is therefore

*Affirmed.*

---

12. Under the 2004 amendment to the Neglect Rules, *supra* note 10, a motion to revoke protective supervision may now be filed not only by the District of Columbia but also by the child's guardian *ad litem* or counsel; in addition, the court *sua sponte* may initiate revocation proceedings. *See* Negl. R. 26(a) (2006 ed.).

13. Under the 2004 amendment to the Neglect Rules, this language now appears in Rule 43(a).