**Raymond FITZHUGH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 79–16.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1980.
Decided May 27, 1980.

Harry Toussaint Alexander, Washington, D. C., for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and E. Thomas Roberts, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of armed robbery, D.C.Code 1973, §§ 22–2901, –3202, and sentenced to imprisonment for a term of three to nine years. He argues on appeal that (1) there is insufficient identification evidence to support his conviction; (2) the trial court erred in allowing the government to present certain rebuttal evidence; and (3) the court erred in denying his motion for a new trial based on a claim of ineffective assistance of counsel.[1] We affirm.

On July 5, 1977, two men, accompanied by two women dressed in hot pants and halter tops, entered the Flaming Embers Steak Joint on Thomas Circle in Washington. Mr. Artis Fortineau, the night chef in charge of the restaurant in the manager's absence, informed the group that the restaurant would not serve women wearing hot pants or halter tops. An argument ensued. When the four refused to leave, Fortineau called the police, who escorted the group out of the restaurant.

On July 9, at approximately 12:30 a. m., Fortineau left the Steak Joint carrying his pay of $135. While waiting for a cab, he noticed four people at a bus stop, one of whom approached him and called back to the others, "There's the guy that did not feed us." Appellant, whom Fortineau recognized as one of those he refused to serve, grabbed Fortineau and forced him into an alley. Appellant's male companion pinned Fortineau to the ground while appellant injected an unknown substance into Fortineau's arm. The group left, taking Fortineau's money.

Fortineau stumbled to Fourteenth Street, hailed a cab, and was driven home. A friend then drove him to the Washington Hospital Center. While there, Fortineau requested to speak to Detective Johnson, who he knew worked in the Thomas Circle area, and gave him a description of the robbers.

1. Appellant also argues that the prosecutor improperly elicited testimony concerning appellant's association with prostitution. The testimony, however, was relevant to appellant's means of support (the motive for robbery), and to rebut appellant's firm denial that he frequented the Fourteenth Street area.

On July 12, on leaving work with the restaurant manager, Mr. Lee Wallace, Fortineau spotted appellant on the street. He identified him to Wallace, who reported that he had asked appellant and a companion to leave the Steak Joint twice that day. Fortineau went directly to Detective Johnson and identified appellant as his assailant.

Both Fortineau and Detective Johnson testified at trial. Appellant presented an alibi defense, claiming that on the night of the alleged offense, he was helping his girlfriend's mother move from Youngstown, Ohio to Arlington, Virginia. He also claimed that he had never been in the Steak Joint, that he did not frequent the Thomas Circle area, and that he never went north of Fourteenth and I Streets. He presented the testimony of a defense investigator to whom Fortineau had given a conflicting description of his assailant and to whom Fortineau had said there was only a "fifty-fifty chance" that he had identified the right man.

On rebuttal, the government called three Metropolitan Police Department officers, all of whom were assigned to the Fourteenth Street area, and Wallace, the Steak Joint manager. The officers testified that they had seen appellant in the Thomas Circle-Fourteenth Street area on numerous occasions; Wallace testified about the two occasions on which he asked appellant and his companion, a man with a gold tooth and long processed hair, to leave the restaurant.

Appellant's first argument is that the government's evidence of identity, consisting solely of Fortineau's vacillating pretrial statements, was insufficient to support his conviction. Specifically, he points to the fact that Fortineau gave pretrial descriptions of his assailant as having a gold star on his tooth, as being approximately 6'3" tall while wearing five to six inch heels, and as having processed hair. This description, appellant argues, is wholly inconsistent with his appearance.

■ Ordinarily, the question for review would be whether, viewing the evidence in the light most favorable to the government, the prosecution had produced sufficient evidence from which reasonable minds could find guilt beyond a reasonable doubt. *Crawford v. United States*, 126 U.S.App. D.C. 156, 375 F.2d 332 (1967). However, since appellant failed to make a motion for judgment of acquittal at trial, our review is limited to whether there has been a "manifest error" or "serious injustice." *Richardson v. United States*, D.C.App., 276 A.2d 237 (1971).[2]

■ The record shows that Fortineau saw appellant twice before he identified him to Detective Johnson. He identified appellant from a group of people on the street only three days after his attack, went immediately to Detective Johnson, and was "100% positive" of his identification. Fortineau explained why his early descriptions might not have been accurate in every detail: he had trouble estimating appellant's height because appellant was wearing five to six inch heels each time he saw him; and he had been under the influence of appellant's injection and therefore might have confused appellant with his companion. He further testified that he had qualified his identification as only a "fifty-fifty chance" because he was afraid of appellant's retaliation. The inconsistencies were all presented to the jurors, and it was within their province to resolve them. *See Anderson v. United States*, D.C.App., 364 A.2d 143, 145 (1976). On this record, we see no manifest error or serious injustice.

Appellant's second argument is that the trial judge erred in allowing the government to call the three officers assigned to the Prostitution Enforcement Branch as rebuttal witnesses. He claims that the prosecutor's sole purpose in calling the officers was to suggest that appellant was associated with prostitution.

2. Appellant argues that, since his trial counsel was ineffective, he should not be held to the requirement of making a motion for judgment of acquittal before challenging the sufficiency of the evidence on appeal. Because we reject appellant's ineffective assistance of counsel argument, we need not reach this argument concerning our scope of review.

The decision to allow rebuttal evidence is committed to the discretion of the trial judge; we will reverse her decision only for an abuse of discretion. *See Gregory v. United States*, D.C.App., 393 A.2d 132, 137 (1978). Appellant testified that, because he did not frequent the Thomas Circle area and never went north of Fourteenth and I Streets, N.W., he could not possibly be the man who attacked Fortineau. The government was entitled to rebut this defense with testimony from the three officers that they collectively had seen appellant in the area around, and north of, Thomas Circle on at least thirteen occasions. In light of the strength of the government's case and the fact that testimony concerning prostitution had already been admitted at trial,[3] we conclude that the trial judge did not abuse her discretion in permitting the introduction of the challenged testimony.

Appellant's final contention is that the trial court erred in denying his motion for a new trial based on the alleged ineffective assistance of trial counsel. The test for a post-trial determination of whether a defendant's Sixth Amendment right to the effective assistance of counsel has been violated is whether his "counsel was grossly incompetent and [whether] that counsel's incompetence blotted out the essence of his defense." *Oesby v. United States*, D.C. App., 398 A.2d 1, 4 (1979). The judge, who presided over both the trial and the two-day hearing on appellant's motion, properly applied this standard to the evidence before her. She found that appellant's counsel had not blotted out the substantial defense and specifically noted that he "conducted himself as a courtly, patient, indeed disarming gentleman, as he made his presentation, as he presented his client, as he presented his alibi witnesses, and as he subsequently made his argument to the jury." We see no reason to disturb the court's evidentiary findings or its legal conclusion that counsel was not ineffective.

Appellant's defenses were misidentification and alibi. The record shows that counsel presented the discrepancies concerning the gold star in the tooth, the robber's height, and the robber's processed hair during his direct examinations of appellant and the defense investigator,[4] and during his cross examination of Fortineau. It also shows that, on the issue of alibi, both appellant and his girlfriend's mother testified in great detail concerning appellant's whereabouts at the time of the alleged offense. Both the misidentification and alibi defenses were presented to the jury in appellant's opening statement[5] and closing argument. Although appellant may not be satisfied, in retrospect, with the tenacity of counsel's presentation, we cannot conclude that his attorney was grossly incompetent or that his conduct blotted out a substantial defense.

Appellant argues that counsel's failure to inform him of the importance of presenting character witnesses to the jury deprived him of the defense of good character. However, the record reveals that the attorney did discuss character witness testimony with appellant and that at least one potential witness was suggested, but rejected. It is possible that the attorney chose, as a matter of strategy, not to produce character witnesses, because that would have allowed the government to introduce evi-

---

3. Fortineau testified that the restaurant would not serve women dressed in hot pants or halter tops because prostitutes are often dressed in that fashion. At other times they are known to wear red sweaters, blue mini skirts and corduroy knee-length boots. *Dinkins v. United States*, D.C.App., 374 A.2d 292, 294 (1977) (en banc).

4. Appellant complains that his attorney allowed the defense investigator's report into evidence without objection, yet the admission of the statement, presumably a tactical decision, served to highlight both Fortineau's uncertainty and the lack of clarity in his description of the robber.

5. Appellant disapproves of counsel's reserving his opening statement until after the government's case, and argues that the statement was ineffective when finally given. The reservation of an opening statement is completely proper, and the one given here sufficiently served the purpose of an opening statement. *See Oesby v. United States, supra* at 5.

dence of appellant's two prior arrests. Because appellant has not proffered the names of any witnesses he might otherwise have called or the testimony he would otherwise have elicited, there is no record support for his contention.

Appellant has enumerated forty-seven specific complaints about his attorney, covering everything from voir dire to closing argument. We have considered each one and conclude that the complaints, either separately or collectively, do not amount to gross incompetence that blotted out a substantial defense.

*Affirmed.*