**Vernando E. BROWN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 87–130, 87–856.

District of Columbia Court of Appeals.

Argued Nov. 16, 1988.
Decided March 9, 1989.

Peter H. Meyers, Washington, D.C., appointed by the court, for appellant.

Heidi M. Pasichow, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Elizabeth Trosman, and Daniel Friedman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge,
SCHWELB, Associate Judge, and
PRYOR, Senior Judge.

ROGERS, Chief Judge:

In this appeal appellant Vernando E. Brown contends that his conviction of possession of cocaine with intent to distribute in violation of D.C.Code § 33–541(a)(1) (1988 Repl.) must be reversed because the trial judge instructed the jury that she had "wide latitude" in sentencing appellant, in accordance with Criminal Jury Instructions for the District of Columbia, No. 2.71 (3d ed. 1978), and because the prosecutor so argued to the jury in rebuttal closing argument. We hold that the trial judge erred in instructing the jury that she had "wide latitude" in sentencing appellant. The instruction impermissibly encouraged the jury to speculate on punishment, thereby undermining the fundamental purpose of Instruction No. 2.71 to apprise the jury that its role is to determine guilt or innocence solely on the evidence before it. Moreover, the phrase "wide latitude" was misleading since the judge's sentencing discretion was significantly limited where, as events developed, the judge was required by statute to impose a minimum sentence of imprisonment upon appellant's conviction. D.C.Code § 33–541(c)(1)(B). For the same reasons, the prosecutor's argument about wide sentencing discretion also was improper. However, upon viewing the instructions as a whole and the prosecutor's argument in context, we conclude that the errors were harmless. Accordingly, we affirm.

## I.

On July 24, 1986, Officer Alphonso Walton entered a parking lot behind First Terrace, N.W., where he purchased cocaine from appellant Vernando E. Brown. He gave Brown forty-five dollars in prerecorded police funds. Brown removed a small plastic bag of cocaine from a white napkin containing several other small plastic bags with white powder in them and handed it to Walton. Walton returned to his car and broadcast a clothing description to the arrest team in the area. Within minutes Walton positively identified Brown.

The arrest team found Brown standing near an electrical box in the parking lot where he had made the cocaine sale. Officer Michael Tyler recovered a plastic packet of cocaine that he saw Brown drop to the ground. Officer Willie Buckley also saw Brown drop something from his right hand. Officer Naomi Sleeth recovered the prerecorded police funds that Walton had given to Brown for the drugs from the lip of the electrical box where Brown was standing. Appellant was charged with one count of distribution of cocaine and one count of

possession of cocaine with intent to distribute in violation of D.C.Code § 33–541(a)(1).

Brown's defense was innocent presence, and he claimed that another man named Sparks had been next to the electrical box where the police found the prerecorded funds. In addition to his own testimony, Brown called Roland Yates as a witness. Yates testified that he was with Brown at the time the drug sale allegedly occurred and did not see Brown sell any drugs or have any drugs in his possession.[1] A jury acquitted Brown of distribution and convicted him of possession of cocaine with intent to distribute. As required by statute, the trial judge sentenced Brown to the mandatory minimum sentence of twenty months to five years. D.C.Code § 33–541(c)(1)(B).

## II.

Instruction No. 2.71 reads:

The question of possible punishment of the defendant in the event of conviction is no concern of the jury and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of conviction rests exclusively upon the Court [, *and the Court has wide latitude in such matters*]. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

Criminal Jury Instructions for the District of Columbia, No. 2.71 (3d ed. 1978) (emphasis added). The comment accompanying

1. In defense, Brown also called Carl L. McClanahan, an expert in fingerprint evidence, who testified that there were no usable fingerprints on the packet of powder sold to Walton, on the packet found on the ground by Tyler or on the prerecorded funds recovered from the electrical box. He also testified that fingerprints were not commonly found on money or plastic, and that their absence did not indicate that a person had not touched an object.

2. Defense counsel called the jury's attention to the discrepancy between Officer Walton's grand jury testimony that the drug purchase had occurred on the street and the testimony at trial that the sale occurred in a parking lot. Defense counsel also noted the inconsistency between Walton's sworn report that the sale occurred

the instruction states that "[t]he bracketed language in the second sentence of the instruction should be omitted if the defendant is being tried for an offense requiring the imposition of a mandatory minimum prison sentence." *Id.* Brown contends that the trial judge's use of the bracketed language impermissibly encouraged the jury to focus on punishment in reaching its deliberations and that it incorrectly informed the jury of the law since the trial judge had no latitude—let alone "wide latitude"—in imposing sentence. We agree that the instruction was error.

## A.

During the discussion of the instructions, the trial judge indicated that she intended to give Instruction No. 2.71. Defense counsel did not object, and closing arguments followed. Defense counsel argued to the jury that Brown was a working man who did not have to be out on the street selling drugs, that he lived right around the corner from the parking lot and was "literally walking right outside of his apartment," that after the police arrested him they immediately searched him but found no prerecorded funds on him and, "importantly," that "there was no white napkin [found] in his pockets." Counsel further noted that Yates corroborated Brown's testimony. Defense counsel then reviewed "continual conflicts, confusions, and absolutely contradictory evidence that these police officers gave about what happened."[2] The prosecutor objected several

next to a trash dumpster and the testimony at trial that the sale occurred next to an electrical box. Counsel pointed out that the officers had testified that there were trash dumpsters all over the place. Counsel emphasized that Walton testified that he was positive Brown had several plastic packets of cocaine in a white napkin. Counsel further pointed out that the arrest team officers differed as to when they saw Brown drop something, one officer saying he saw it immediately as he got out of the car and the other saying it happened about 60 seconds after they arrived in the lot. Counsel also suggested, in view of the evidence of the different purity levels of the drugs in the two recovered packets, that they did not come from the same source. Counsel additionally emphasized that although the oils on a person's hand nor-

times during defense counsel's argument, claiming once, unsuccessfully, that defense counsel was appealing to the emotions of the jury with anti-government sentiments.

The prosecutor began his rebuttal closing argument to the jury by asking the jury if it had ever seen a shell game on the street and argued that defense counsel was playing the same game with the jury by trying to deflect the jury's eye from the fact that Brown had sold the drugs. The prosecutor offered a different interpretation of the evidence than defense counsel had highlighted in his closing argument and pointed out problems with the defense evidence. In conclusion, the prosecutor told the jury that

> [t]he Defendant appears young, nice, we're told that he's employed. That may cause you to have sympathy for him, but the judge will tell you to put sympathy out of your mind. She'll also tell you that your job is only to determine the facts in the case. Did he do it or didn't he?
>
> Punishment is no concern of yours. The judge has broad latitude in that. Only thing you are to determine: Did he do it or not.

Defense counsel immediately objected to the prosecutor's reference that the judge has "broad latitude" in punishment on the ground that it left a "very misleading impression" for the jury since the judge did not have any sentencing discretion and could impose only one penalty. The judge responded that Brown was eligible for sentencing under the Youth Rehabilitation Amendment Act, a claim joined by the prosecutor, and the judge proceeded to instruct the jury. The trial judge read Instruction No. 2.71 in its entirety, including the bracketed material which states that the "court has wide latitude in such matters [of imposing sentence]."

Upon completion of the instructions, defense counsel advised the trial judge that Brown was not eligible for youth offender

treatment and hence the instruction and the prosecutor's argument about the court's wide sentencing latitude were incorrect. In response, the prosecutor suggested that the judge still had discretion whether to impose consecutive or concurrent sentences. The judge, however, conceded her error about Brown's eligibility under the Youth Rehabilitation Amendment Act and that she did not have a great deal of discretion.

Defense counsel then moved for a mistrial, being of the view that reinstruction would not cure the harm done by the judge's instruction and the prosecutor's argument. The judge denied the motion stating that the thrust of the instruction and the prosecutor's argument made it clear that the jury was to focus on fact-finding. The judge also denied defense counsel's request to instruct the jury that she had misinformed the jury about having a great deal of discretion on the ground that it would almost assure that the jury would take punishment into account.

### B.

■■■■ Instruction No. 2.71, read as a whole, accurately reflects the general principle that the jury is to determine guilt or innocence on the evidence before it and should not consider the possibilities of punishment in its deliberations because sentencing is exclusively within the duties of the court. *Alston v. United States*, 383 A.2d 307, 314 (D.C.1978), *appeal after remand*, 412 A.2d 351 (D.C.1980); *Anderson v. United States*, 326 A.2d 807, 811 (D.C. 1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). Although this court has cited Instruction No. 2.71 with approval, *see, e.g., Powell v. United States*, 485 A.2d 596, 600 (D.C.1984), *cert. denied*, 474 U.S. 981, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985); *Anderson, supra*, 326 A.2d at 811 & n. 6, the court has not had occasion to address the bracketed language. The question in this appeal is whether that clause impermissibly invites the jury to

---

mally leave fingerprint marks, Brown's were not found on either of the packets or the prerecorded money. Also, counsel noted that the money was found on the side of the electrical

box where another man, Sparks, was standing. He noted, too, that Brown, and not the government, had called for the examination of the evidence for fingerprints.

speculate on the possibility of punishment. We hold it does.

The government asserts that the "wide latitude" clause does not encourage the jury to consider punishment in reaching its verdict but merely bolsters the general principle that the jury ignore punishment. The statements by both the trial judge and the trial prosecutor contradict this assertion. In explaining why she informed the jury of her "wide latitude" in sentencing, the trial judge stated that

> to some extent I made my comments, punishment aside, because of my perception. The defense was trying to present the good character of the Defendant through saying he's employed, he's been sitting throughout the trial with a cross visible and sometimes he says, I think he said a prayer after he stepped down from the stand on Friday, and he's young looking and I think they try to make a little something out of that. I was trying to make a little response to that.

This instructional motivation clearly was not limited to bolstering the general principle that the jury ignore punishment. The prosecutor likewise conceded to the trial judge that in light of the jury instruction "[i]t may be that [the jury] may think they are not sending him to jail." The prosecutor nonetheless argued against a mistrial and reinstruction of the jury because, even though the jury was informed of the trial judge's wide latitude in sentencing, because "[the jury is] not supposed to think about that at all." [3]

If the purpose of Instruction No. 2.71 is to restrain the jury from considering sentencing, then the jury should not be informed that the trial judge has wide latitude in sentencing. At best, the uncertain benefits of the bracketed language are outweighed by the risks of a counterproductive result. At worst, it implies to the jury that the trial judge may exercise leniency in sentencing the defendant. As the trial judge's explanation indicates, where the trial judge informs the jury that the judge has wide sentencing latitude it is highly likely that the jury will speculate on the punishment that the judge may impose on the defendant.[4] Consequently, we find no meritorious purpose for inclusion of the bracketed clause as part of Instruction No. 2.71 regardless of whether sentencing is controlled by a mandatory minimum sentence. It should not be given in the future.

■ The error in reading the bracketed clause to the jury was compounded because it misstated the law. *Grant, supra* note 4, 509 A.2d at 1153 (sentencing scheme designed to restrict judge's sentencing discretion for certain drug offenses). The clause provides that the trial judge has "wide latitude" when a mandatory minimum sentence of twenty months imprisonment applies. The comment to Instruction No. 2.71 makes clear that the bracketed portion of the instruction is inappropriate when mandatory penalties are applicable. Despite such discretion the trial judge had to impose consecutive or concurrent terms of imprisonment had Brown been convicted on both counts; the judge could not have avoided imposing at least the mandatory minimum sentence of twenty months. As the government now concedes and the trial judge conceded at the time of sentencing,

---

**3.** The government argued against reinstruction of the jury that mandatory penalties applied to the offense with which Brown was charged precisely because—even though it would correctly state the law—it would impermissibly encourage the jury to consider the possibility of punishment in reaching its decision. We agree. However, we are unable to distinguish an instruction that informs the jury of mandatory minimum sentences from one that informs the jury that the trial judge has wide latitude in imposing punishment. The latter instruction informs the jury of the possibility of leniency and where the defendant is sympathetic, as in the instant case according to the trial judge's own assessment, there is no reason why a rea-

sonable jury would not assume that the trial judge would exercise his or her "wide latitude" in sentencing accordingly. See note 6, *infra.*

**4.** The mandatory sentencing provisions of D.C. Code § 33–541(c) were enacted by citizen initiative. *See Grant v. United States,* 509 A.2d 1147, 1151 n. 3 (D.C.1986). As a consequence, it is not inconceivable that awareness among the jurors of the nature of the sentence that Brown could receive upon conviction might well have been greater than would be true where the sentence was the result of an enactment by Congress or the Council of the District of Columbia.

the judge's discretion was limited by the mandatory minimum provisions.[5]

■ Nevertheless, we are satisfied that the instructional error was harmless. *Carter v. United States*, 475 A.2d 1118, 1124 (D.C.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985) (citations omitted); *see also Powell, supra*, 485 A.2d at 601. The entire instruction informed the jury of its obligation to determine Brown's guilt or innocence based solely on the evidence without concern for potential punishment. We must presume that the jury understood and followed the court's instructions since the record does not indicate otherwise. *Hairston v. United States*, 497 A.2d 1097, 1103 (D.C.1985); *Owens v. United States*, 497 A.2d 1086, 1092 n. 7 (D.C.1985), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986); *Jones v. United States*, 477 A.2d 231, 248 n. 40 (D.C.1984). Furthermore, the trial judge was fully apprised of appellant's concerns when she denied his request for a mistrial, and some deference is due to the judge's evaluation of the prejudice. *Wesley v. United States*, 547 A.2d 1022, 1029 (D.C.1988); *Holt v. United States*, 547 A.2d 158, 158 n. 2 (D.C.1988); *Catlett v. United States*, 545 A.2d 1202, 1213–14 (D.C.1988). Moreover, the government's evidence against Brown was strong.

For similar reasons, we conclude that it is unlikely the jury considered punishment as a result of the prosecutor's closing argument. The impermissible reference did not inform the jury that a specific penalty would not be imposed but only implied the possibility for leniency at sentencing. *Cf. Obregon v. United States*, 423 A.2d 200, 210 (D.C.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981) (reversal unwarranted where the prosecutor impermissibly apprised the jury in closing argument in a first-degree murder case that the death penalty was not given in the District of Columbia).[6] Nor does the mixed verdict of guilt and innocence alone suggest that the verdict was the result of an impermissible compromise based on the bracketed clause of Instruction No. 2.71. The cases on which Brown relies are distinguishable since the jury was informed of specific sentencing considerations and the record revealed that the jury in fact contemplated their use with the plausible result of a compromise verdict.[7] Here there

---

5. Contrary to the government's argument, at the time the trial judge gave the instructions she did not have a number of sentencing options. Brown was ineligible for sentencing under the Youth Rehabilitation Amendment Act of 1985, D.C.Code §§ 24–801 to 24–807 (1986 Supp.). Furthermore, neither the government nor Brown had indicated that he was eligible for sentencing under the addict exception of § 33–541(e)(2). The opportunity of the trial judge to exercise discretion under this exception is entirely dependent upon the defendant first affirmatively establishing his eligibility. *Grant, supra* note 4, 509 A.2d at 1152. Brown was in fact ineligible. In any event, even if Brown had been eligible for youth offender sentencing or indicated his intention to seek "addict exception" treatment, these sentencing options hardly constitute "wide latitude." Instead, they represent narrow exceptions designed for very specific and unique public policy purposes.

Even though the judge could have imposed consecutive or concurrent sentences if Brown had been convicted of both counts in the indictment, the jury was not informed that the judge's discretion was limited or contingent; rather, the plain language of the bracketed clause unambiguously provides that the judge has "wide latitude." At the time the judge read the instruction she had no basis on which to support her

statement that she had "wide latitude" other than to speculate that the jury might return a guilty verdict on both counts. "Wide latitude" seems a mischaracterization when, at the time the instruction was read, the discretion could be triggered only by speculation on a contingent outcome.

6. There is language in *Alston, supra*, to suggest that the trial judge should have instructed the jury to disregard the prosecutor's remark about the judge's "broad latitude" in sentencing. 383 A.2d at 314 (citing *United States v. Patrick*, 161 U.S.App.D.C. 231, 494 F.2d 1150 (1974)); *see Powell, supra*, 485 A.2d at 600. A similar instruction to disregard the "wide latitude" clause in the instruction given to the jury in Brown's case might well have been appropriate too.

7. For example, in *United States v. Patrick, supra* note 6, 161 U.S.App.D.C. 231, 494 F.2d 1150, after several hours of deliberations that extended over two days, the jury sent a note to the trial judge advising that it was unable to reach a verdict because ten jurors found the defendant guilty of first degree murder and two found him not guilty by reason of insanity. The judge asked the jury to continue deliberating. Within an hour the jury sent another note to the judge asking "if they can make a recommendation of

is nothing beyond appellant's speculation, which will not suffice in face of the instruction to the jury, to indicate that in its deliberations the jury relied on the possibility of leniency that was implied in the "wide latitude" instruction and the prosecutor's remarks.

Accordingly, the judgment is affirmed.

psychiatric treatment for the defendant along with a verdict of murder in the second degree?" The judge responded, "Yes, if your verdict of murder in the second degree is beyond a reasonable doubt as to all elements and unanimous." The judge then commented to counsel that "it looks as though we have a verdict." Fifteen minutes later the jury returned its verdict of "guilty of murder in the second degree," further stating that "the jury recommends that the Defendant receive psychiatric treatment." *Id.* at 234, 494 F.2d at 1153. The court of appeals reversed the conviction and remanded the case for a new trial because the second note—especially in light of the first note stating that the jury was divided ten to two—was plausibly "aimed at facilitating a compromise verdict by soliciting information that would assure those dissenting jurors, who would not otherwise have acquiesced, that [the defendant] would receive treatment." *Id.* at 236, 494 F.2d at 1155. *See also Rogers v. United States,* 422 U.S. 35, 40–41, 95 S.Ct. 2091, 2095–2096, 45 L.Ed.2d 1 (1975) (reversal where jury returned a verdict of "[g]uilty as charged with extreme mercy of the Court" five minutes after asking if the trial judge would accept its verdict with a sentencing recommendation); *Commonwealth v. Buckley,* 17 Mass.App.Ct. 373, 376–77, 458 N.E.2d 781, 783–84, *review denied,* 391 Mass. 1103, 461 N.E.2d 1219 (1984) (reversal where the trial judge instructed, in response to jury's questions, that with parole actual jail time is less than sentence).