Antwan N. SHELTON, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–1254.

District of Columbia Court of Appeals.

Submitted Sept. 24, 2009.

Decided Nov. 19, 2009.

Cynthia Nordone, appointed by the court, for appellant.

Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Emily Scruggs, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and WAGNER, Senior Judge.

WAGNER, Senior Judge:

Following a jury trial, appellant, Antwan Shelton, was convicted of unlawful distribution of a controlled substance.[1] He argues for reversal on the grounds that: (1) the trial court erred in instructing the jury that there is no mandatory minimum peri-

---

1. The offense of conviction is the lesser-included offense of unlawful distribution of a controlled substance in a drug-free zone, D.C.Code §§ 48–904.01(a)(1), –904.07a (2001). The trial court granted appellant's motion for judgment of acquittal of the greater offense. The jury acquitted appellant of one count of distribution of a controlled substance.

od of incarceration for the offenses charged, thereby impermissibly permitting the jury's consideration of punishment; and (2) the trial court abused its discretion in allowing certain rebuttal evidence. We hold that assuming error in the court's instruction, it was harmless, and we find no abuse of discretion in the remaining challenged rulings. However, we remand the case for correction of the Judgment and Commitment Order to reflect the trial court's grant of appellant's motion for judgment of acquittal on the greater offense of distribution of a controlled substance in a drug free zone.

## I.

According to the evidence, Officers Anthony Manley and Ronald Royster were observing an area in the 5100 block of Call Place, S.E. in the afternoon on September 5, 2002. There, they observed appellant sitting on a fence where he was approached by an individual with whom he had a brief conversation. Appellant then went between two fences, bent down and picked up a clear, plastic bag containing a loose rock-like substance. Appellant and the other person went into an apartment building before coming back outside and parting company. Appellant repeated the conduct with another individual who approached him. The next episode involved one Jerome McIlwain. This time, appellant slid between the fence and handed Mr. McIlwain a rock-like substance in exchange for cash. Officer Royster gave a description of Mr. McIlwain to other officers who stopped him and recovered from him a rock of crack cocaine. The officers then observed Ms. Belinda Wheeler approach appellant and give him cash in exchange for something he retrieved from the plastic bag. Ms. Wheeler was stopped

shortly thereafter, and the police recovered from her a rock of crack cocaine. The police then stopped appellant near the fence. They found in that area an empty clear plastic bag. The police arrested appellant and recovered from him $268 in cash. The chemist's report at trial indicated that the substances taken from Mr. McIlwain and Ms. Wheeler were crack cocaine.

## II.

Appellant argues that the trial court erred by instructing the jury that there are no mandatory periods of incarceration for individuals convicted of the offenses under consideration in the case. He contends that the court's instruction impermissibly invited the jury to consider punishment in its deliberations and that the error was not harmless.

## A.

Appellant objected when the trial court indicated its intention to instruct the jury that there are no mandatory periods of incarceration for individuals convicted of the offenses charged. Citing *Brown v. United States,* 554 A.2d 1157 (D.C.1989), appellant argued that such an instruction would impermissibly invite the jury to speculate about possible punishment. The government argued that the proposed instruction was proper because it was an accurate statement of the law, and the court had indicated that it would instruct the jury that the question of possible punishment should not influence the jury's deliberations. The trial court decided to give the instruction over the defense's objection, explaining essentially that it would eliminate improper perceptions that jurors might have about mandatory sentencing in the event of conviction.[2] The court reject-

2. The experienced trial judge related his experience that over 90 percent of the time when

ed appellant's argument that the *Brown* case prohibited such an instruction. The court instructed the jury, in relevant part, as follows:

> This case is being tried under the laws of the District of Columbia, and there is no mandatory period of incarceration if someone is convicted of ... any of the charges that you are considering.

> Moreover, the question of possible punishment of a defendant should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests only with me. You should weigh the evidence in the case and determine the guilt of innocence of the defendant based solely on the evidence presented at this trial without any consideration of the matter of punishment.

### B.

■ It is well established that the jury's function is to determine guilt or innocence based on the evidence and the law and that it should not consider possible punishment, which is the exclusive province of the court. *Brown, supra,* 554 A.2d at 1160 (citing *Alston v. United States,* 383 A.2d

307, 314 (D.C.1978), *appeal after remand,* 412 A.2d 351 (D.C.1980)) (other citations omitted).[3] In *Brown,* this court held that it was error for the trial court to instruct the jury that the court had "wide latitude" in sentencing the defendant because the instruction "impermissibly encouraged the jury to speculate on punishment, thereby undermining the fundamental purpose of Instruction of No. 2.71 to apprise the jury that its role is to determine guilt or innocence solely on the evidence before it." *Id.* at 1158.[4] The danger of putting before the jury matters outside the evidence that might influence their verdict has long been recognized. *See United States v. Patrick,* 161 U.S.App. D.C. 231, 234–35, 494 F.2d 1150, 1153–54 (1974) (citing *Miller v. United States,* 37 App.D.C. 138, 143, 1911 WL 20116, *4 (1911)) (recognizing this long-standing principle and finding error where the trial court informed the jury that it could recommend treatment if it returned a guilty verdict). In finding error in *Patrick,* the Circuit court explained that the jury question was whether there was criminal responsibility and that allowing it to make a treatment recommendation permitted the jury to focus on disposition rather than blame.[5] *Id.* at 1154.

---

we talk to people about such cases, "their concern is ... that there are mandatory jail times in the District of Columbia for drug charges, and that if they return a verdict of guilty that it will be absolutely required that the defendant will go to jail."

3. In *Brown,* the court noted that standard jury instruction No. 2.71, Criminal Jury Instructions for the District of Columbia, (3d ed. 1978), which this court has approved, accurately reflects the well-established principle that the jury is to decide the case based upon the evidence presented and not consider punishment in its deliberations. The instruction appears in the 4th edition (2002) as No. 2.74.

4. The error was compounded in *Brown* because it misstated the law in that the trial court's discretion was limited by mandatory

minimum sentence requirements. *See id.* at 1161.

5. A portion of a passage quoted from *Miller, supra,* in *Patrick, supra,* on the danger of injecting issues detracting from the jurors' function to decide the case based only on the evidence is illuminating on this issue. We repeat it here to remind the trial court of the pitfalls of altering instructions in a way that might have the effect of interjecting improper elements into the jury's deliberations.

> "The deliberations of the jury should revolve around the evidence before them, and should not be influenced by other considerations or suggestions. The moment other suggestions or considerations find lodgment in their minds, that moment they stray from the path which the law has marked out, and their verdict, in consequence, does not rest

In light of this well-established principle, while not conceding the issue, the government does not argue the propriety of the instruction. Rather, it argues that even assuming that the trial court erred, the error was harmless. Appellant argues that the trial court's instruction here had a far greater potential for encouraging the jury's improper consideration of punishment in its deliberations than the "wide latitude" language condemned in *Brown, supra.* Here, he points out, the trial court specifically referenced incarceration as a form of punishment, while the instruction in *Brown* referred to the trial court's discretion and the possibility of leniency. Further, appellant argues that the error was not harmless for a number of reasons which we discuss later in this opinion. In light of the government's position, we will assume, without deciding, that the trial court erred in giving the challenged instruction and proceed to the parties' respective arguments on whether the error was harmless.

## C.

■ An instruction on possible punishment in the event of conviction may be considered harmless error. *See, e.g., Taylor v. United States,* 866 A.2d 817, 826 (D.C.2005) (concluding that the court's error in instructing the jury that D.C. has no death penalty was harmless error in light of the court's instruction that the jurors "are not allowed to consider what, if any, sentence might be imposed" and the presumption that the jury follows the law); *Brown, supra,* 554 A.2d at 1162 (finding error harmless because of instruction obligating jury to decide the case based on the

evidence, the presumption that jurors follow the law, and deference due the trial court's denial of a mistrial motion based on similar concerns); *cf. Patrick, supra,* 161 U.S.App.D.C. at 235–36, 494 F.2d at 1154–55 (instruction in response to jury note that jury could recommend treatment upon conviction not harmless where the government argued that the jury had reached a guilty verdict before inquiring about treatment, and the circumstances suggested equally plausibly that the note was aimed at obtaining a compromised verdict.). "To find an instructional error harmless, we must be satisfied 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Higgenbottom v. United States,* 923 A.2d 891, 899 (D.C. 2007) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (internal quotation marks and citation omitted). Applying these principles, we consider the parties' respective harmless error arguments.

■ The government's harmless error argument is premised upon the strength of its case and the surrounding jury instructions. Appellant argues that the error was not harmless because: (1) the instruction planted the concrete idea of punishment in the jurors' minds; (2) the instruction was misleading and failed to provide an accurate understanding of the possible sentence upon conviction; and (3) the circumstances leading to a split verdict in the case render it impossible to conclude that the verdict was not affected by the jurors' speculation about punishment.

solely upon the evidence. It [is] a colored and false verdict. When we consider that the existence of a reasonable doubt entitles a defendant to an acquittal, and that a very slight circumstance may affect the verdict, the danger from putting before the jury

anything that may improperly influence their deliberations becomes more apparent." *Patrick,* 161 U.S.App. D.C. at 234–35, 494 F.2d at 1153–54 (quoting *Miller,* 37 App.D.C. at 143, 1911 WL 20116 at *4).

Appellant's first argument, that the charge planted the idea of punishment and imprisonment in the jurors' minds, is not unlike the circumstances presented in *Taylor, supra.* In *Taylor,* the court reminded the jury that there is no death penalty in the District of Columbia before instructing that the jury was "not permitted to consider the matter of punishment" and that sentencing was the court's responsibility. 866 A.2d at 825. There, as here, the court's instruction focused the juror's attention on punishment in its charge by informing them about what the penalty could not be. *Id.* Nevertheless, we concluded that the error was harmless in *Taylor* where the trial court also informed the jury that it was not to consider the matter of punishment, that it was the court's responsibility to impose punishment, and that the jury was not to consider what, if any, sentence might be imposed. *Id.* at 825–26. Similarly, in this case, the court instructed the jury that a period of incarceration was not mandatory, thereby focusing its attention on punishment, and implicitly, the potential for leniency. However, like *Taylor,* the trial court here also instructed the jury not to consider possible punishment in its deliberations, that it should decide the case based only on the evidence without any consideration of the matter of punishment, and that the duty of imposing sentence rested exclusively with the court. We have oft repeated that the jury is presumed to follow the court's instructions. *Watkins v. United States,* 846 A.2d 293, 301 (D.C.2004); *Brown, supra,* 554 A.2d at 1162.

Second, appellant argues that the error was not harmless because the court's instruction was misleading in that it implied that appellant would face some term of incarceration, although not a "mandatory period." Even if this were a fair reading of the instruction given by the court, it does not appear that it would foreclose a finding of harmlessness, given the remaining instruction given by the court. *See Taylor, supra,* 866 A.2d at 826.

Finally, appellant argues that the court cannot conclude that the jury's verdict was not affected by speculation about possible punishment because the jury reported being hung on one count and, shortly thereafter, returned a split verdict that appears to be a compromise. The facts underlying this argument are as follows. While deliberating, the jury sent a note at 11:35 a.m. which inquired, "[i]f we've reached a verdict on one count and are hung on another count[,] does that [jeopardize] the one count we reached the verdict on?" At 12:55 p.m., the jury sent another note indicating that it had reached a verdict. The jury found appellant guilty of one count of unlawful distribution of a controlled substance (cocaine base) in a drug free zone (involving Ms. Wheeler), and not guilty of that offense and the lesser-included offense as related to Mr. McIlwain. Neither the verdict itself nor the notes leading to its return shed any light on whether the split verdict resulted from the jury's focus on punishment as a result of the court's instruction. This case is unlike *Patrick, supra,* where it appeared from the circumstances that the jury's guilty verdict may have been the result of a compromise reached after the court instructed the divided jury in response to its inquiry that it could recommend treatment. 161 U.S.App.D.C. at 236, 494 F.2d at 1155. The court stated in *Patrick* that where there had been a note that the jury was divided ten to two, it was a plausible hypothesis that a second note "was aimed at facilitating a compromise verdict by soliciting information that would assure those dissenting jurors, who would not otherwise have acquiesced, that appellant would receive treatment." *Id.* Here, there is no similar nexus between the instruction giv-

en prior to deliberations and the verdict returned ultimately. There was no note seeking explication of sentencing options in the event of conviction. There is nothing other than appellant's speculation that the jury compromised its verdict because it improperly considered punishment in its deliberations. Therefore, we perceive no basis to find that the error was not harmless based on this argument.

Finally, the government argues that the strength of its case supports a finding of harmless error. Two eyewitness police officers testified that they observed appellant reach into a plastic bag several times before exchanging a rock-like substance with individuals for cash. The police stopped two of those individuals shortly after these encounters, and found on them loose rocks of crack cocaine. The officers recovered $268 from appellant after his arrest, and they found an empty clear plastic bag in the area where appellant had interacted with the two people. Thus, the evidence against appellant was strong. Given the strength of the government's case, the effect of the court's instructions as a whole, and the presumption that the jury follows the court's instructions, we are persuaded that any error was harmless. *See Kotteakos, supra,* 328 U.S. at 765, 66 S.Ct. 1239.

### III.

Appellant's two remaining arguments for reversal require only brief discussion. Appellant argues that the trial court abused its discretion (1) in permitting the government to introduce certain evidence in rebuttal, and (2) in permitting the government to reopen its case after the close of the evidence to introduce additional rebuttal evidence. We find no abuse of discretion in the trial court's rulings

### A.

Appellant argues that the trial court abused its discretion in allowing the government to present rebuttal evidence concerning the contents of the plastic bag because there had been no evidence concerning it during appellant's case-in-chief. The facts surrounding appellant's challenge are these. During the government's case-in-chief, Officer Royster testified that he observed appellant remove a loose rock-like substance from a plastic bag. The defense's drug expert testified that the rocks of crack cocaine seized from Ms. Wheeler and Mr. McIlwain were not "from the same source" because the drugs had different levels of purity. The government sought to call Officer Royster in rebuttal to testify whether he saw more than one rock in the plastic bag. Appellant argued that it was not proper rebuttal, and the government responded that it was an appropriate response to the defense expert's opinion. The trial court allowed the rebuttal testimony over the defense's objection. Officer Royster testified ultimately that he "couldn't really tell if it was one solid object or if it was ... a couple of solid objects."

In order to protect a defendant from surprise, the government should not advance new arguments on rebuttal. *Porter v. United States,* 826 A.2d 398, 409 (D.C.2003). Rebuttal evidence should be presented to refute, contradict, impeach or disprove the evidence that the adversary has already elicited. *Beynum v. United States,* 480 A.2d 698, 704 (D.C.1984). This rule is not an inflexible one, and the trial court has discretion to determine whether rebuttal evidence will be allowed. *Porter,* 826 A.2d at 409; *McCoy v. United States,* 760 A.2d 164, 185 (D.C.2000). The trial court's decision to allow rebuttal evidence will be reversed only for an abuse of discretion. *Rowland v. United States,* 840

A.2d 664, 680 (D.C.2004) (citing *Fitzhugh v. United States*, 415 A.2d 548, 551 (D.C. 1980)). Our review of the trial court's decision in this regard is considerably deferential because of its superior vantage point during the course of the trial. *Id.* Applying that standard, we find no abuse of discretion in the trial court's ruling.

Although the defense's expert did not testify about the contents of the plastic bag from which appellant was observed taking drugs, he did offer the opinion that the drugs taken from Mr. McIlwain and Ms. Wheeler were not from the same source. As the government points out, an inference could be drawn from this evidence that if there was only one rock in the bag, the same person could not have sold the drugs to both individuals. That inference would have been inconsistent with the version of events given by the two police officers who testified in the government's case. Therefore, the court did not abuse its discretion in allowing the government to elicit rebuttal evidence to refute the evidence and inferences that could be drawn from the testimony of appellant's expert. *See Beynum, supra,* 480 A.2d at 704.

### B.

■ Finally, appellant argues that the trial court abused its discretion in permitting the government to reopen its case after the close of all the evidence. Specifically, he contends that the trial court should not have permitted the government to introduce into evidence a police form (PD 252) related to a PD 251 introduced as a defense exhibit. He contends that the timing and introduction of this evidence bolstered the government's case.

Briefly stated, introduction of the PD 252 occurred against the following backdrop. Over the government's objection, the trial court permitted appellant to ques-

tion Officer Manley about the physical description of an individual referred to in a PD 251 in an effort to impeach him. The PD 251 had the same complaint number, address, and date associated with the drug sales involved in appellant's case. However, the description for the person in the form was different than that of appellant and the description that Officer Manley had written in his notes on the date of the offenses in this case. The government argued that it should be allowed to offer further evidence that the person described in the PD 251 was not appellant and stated that it was precluded from introducing other documentary evidence to support Officer Manley's testimony that the PD 251 did not involve appellant because the other person was a juvenile whose records were sealed. While discussing jury instructions, the government objected to the court's proposed instructions on inconsistent statements as it related to Officer Manley's description of the person in the PD 251 and the description in his notes. It argued that there was no inconsistency because the two documents referred to different individuals. The government complained that it was unable to substantiate Officer Manley's testimony that the description in the PD 251 was for a juvenile and not appellant. After further discussion, at the government's request, the court unsealed the juvenile's record which showed a PD 252 completed by Officer Manley in the juvenile's case which went along with the description in the 251. The court rejected appellant's argument that this PD 252 should have been introduced during the government's case-in-chief because the prosecutor thought that he was precluded legally from introducing the juvenile's records. Before closing arguments, the parties moved the PD 251 and PD 252 into evidence, and the court pro-

vided the jury with an instruction explaining the documents.[6]

■ Whether to permit a party to reopen its case after the close of the evidence is a question within the trial court's sound discretion, and its decision will not be disturbed unless the court is shown to have abused its discretion. *Davis v. United States*, 735 A.2d 467, 472 (D.C.1999) (citations omitted). In determining whether the court abused its discretion in making its ruling, this court considers, among other factors " '(1) the timeliness of the motion, (2) the nature of the evidence, including its relevance, and (3) prejudice to the opposing party.' " *Id.* (quoting *Diaz v. United States*, 716 A.2d 173, 182 (D.C. 1998) (other citation omitted)). Considering these factors, in light of the record presented, we can not say that the trial court abused its discretion in allowing the introduction of the challenged evidence.

As the trial court determined, the government was entitled to respond to the claim that Officer Manley had given inconsistent descriptions of the person who committed the offenses in this case. *See Johnson v. United States*, 434 A.2d 415, 420–21 (D.C.1981) (a party may rehabilitate a witness with prior consistent statements when "the witness" credibility has been challenged.) Defense counsel sought to show that the officer was describing appellant on the PD 251 and that the description was inconsistent with the description that the officer placed in his notes. Although the officer explained that the documents involved two different people, a party would be entitled to substantiate that claim by the presentation of evidence. Here, the court accepted the government's explanation that it thought that it was precluded legally from presenting the juvenile's records, and therefore, had not sought to do so sooner. The court's ruling on unsealing the juvenile's record and admitting the evidence came before closing arguments. Nevertheless, appellant cannot claim surprise because he had introduced the PD 251, and defense counsel acknowledged familiarity with the forms generally. Appellant has not shown that he was denied an opportunity to meet this evidence. *See Rambert v. United States*, 602 A.2d 1117, 1119–20 (D.C.1992). Appellant has made no proffer of what, if any, evidence could be offered in response to the evidence. Finally, appellant has made no showing of prejudice from the delayed admission of the evidence. Under the circumstances, we find no abuse of discretion in the trial court's ruling.

## IV.

Finally, appellant and the government agree that the case must be remanded in order that the Judgment and Commitment Order can be amended to reflect the trial court's decision to grant appellant's motion for judgment of acquittal on the greater charge of distribution of a controlled substance in a drug-free zone and entry of judgment on the lesser-included offense of distribution of a controlled substance. The record supports their position, and we remand the case for that purpose. In all

---

**6.** The court instructed the jury as follows:

... [T]he parties have stipulated, that is that they have agreed that the report that [the government] is referring to is a report that was filled out by Officer Manley.

It's called a Police Department Form 25[2] ... It's a supplement to the Police Department 251 that was referred to in his testimony earlier, and the supplemental report does identify an individual other than Mr. Shelton.

other respects the judgment of the trial court is affirmed.

*So ordered.*