*Notice:   This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.   Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-483

TYRONE BRYANT, APPELLANT,

v.

DISTRICT OF COLUMBIA, *et al*., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAB-6832-09)

(Hon. Gregory E. Jackson, Trial Judge)

(Argued April 2, 2014                                      Decided October 30, 2014)

*Steven C. Kahn* with whom *Arthur P. Rogers*, was on brief, for appellant.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. Alikhan*, Deputy Solicitor General, were on the brief, for appellees.

*Richard T. Seymour* and *Les Alderman* filed a brief for Metropolitan Washington Employment Lawyers Association as *amicus curiae* in support of appellant.

Before WASHINGTON, *Chief Judge*, BECKWITH, *Associate Judge*, and PRYOR, *Senior Judge*.

PER CURIAM:  Appellant Tyrone Bryant filed an action in Superior Court

alleging wrongful discharge from employment by the District of Columbia in

retaliation for repeated statements of his intent to testify against the District in a different civil action. After Mr. Bryant had presented his case-in-chief to a jury in support of his claim, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the trial court concluded that the evidence was insufficient to meet the required prima facie standard and dismissed the case. Mr. Bryant then moved to reopen his case to offer an additional deposition into evidence to meet his burden. The trial court denied the motion, stating that even with the deposition, Mr. Bryant did not present sufficient evidence to constitute a prima facie case. We conclude that with the proffered deposition, Mr. Bryant has stated a prima facie claim, and that the trial court abused its discretion by refusing to reopen the case to admit the deposition and likewise erred in dismissing Mr. Bryant's complaint. We vacate the trial court's judgment and remand the case for further proceedings.

## I.

Mr. Bryant was employed as a correctional officer with the District of Columbia Department of Youth Rehabilitative Services (DYRS) at its Oak Hill Youth Center in Laurel, Maryland. He worked as an at-will employee at DYRS for eighteen years until his termination on November 20, 2008. Mr. Bryant began working at an entry-level position in 1990 and received four promotions until ultimately becoming a shift commander in 2004. Prior to his termination, Mr. Bryant received several awards and positive performance reviews. Mr. Bryant's

direct supervisor, DYRS Deputy Superintendent David Thomas, regarded Mr. Bryant as dependable and an overall good employee.

In 2005, a correctional officer at Oak Hill under Mr. Bryant's supervision filed suit against the District alleging that other DYRS managers had harassed her. In preparation for the litigation, an investigative team for the District toured the Oak Hill facility in September 2008. Mr. Thomas asked Mr. Bryant to lead the tour, and during the course of the tour Mr. Bryant informed the team members that he believed—and would so testify—that the employee had been sexually harassed at work. The following month, October 2008, Mr. Thomas told Mr. Bryant that counsel to DYRS would be contacting him soon to prepare him to testify at a deposition in the lawsuit against the District. Mr. Bryant told Mr. Thomas that he did not need to prepare because he "was going to tell the truth, that [she] was sexually harassed." Oak Hill Superintendent Dexter Dunbar, David Thomas's boss, was present for this conversation.

When contacted by counsel to prepare for the deposition, Mr. Bryant again expressed his intention to testify in support of the claim of harassment against the District. On November 20, 2008, Mr. Bryant was summoned to a meeting with Superintendent Dunbar and two human resources representatives. At that meeting Mr. Bryant was handed a letter signed by DYRS Director Vincent Schiraldi

notifying him—without explanation—that his employment was terminated. When Mr. Bryant asked if his termination was related to his intent to testify against the District, the human resources representative said "he wasn't at liberty to talk about it."

Mr. Bryant filed an action in the Superior Court against the District of Columbia for retaliation under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.61 (2001), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e 3 (a) (2006). The District moved for summary judgment, which the trial court denied, concluding that Mr. Bryant had demonstrated a prima facie case of retaliation. Specifically, the court determined that a reasonable jury could infer that Mr. Bryant's superiors had knowledge that Mr. Bryant was going to testify in the sexual harassment litigation and therefore conclude that there was a "causal connection" between Mr. Bryant's intent to testify and his dismissal.

The case proceeded to a jury trial, where Mr. Bryant recounted the circumstances leading to his dismissal. At the close of Mr. Bryant's testimony, the District again moved for judgment as a matter of law. This time, the trial court granted the District's motion, concluding that Mr. Bryant had failed to provide

sufficient evidence that a reasonable jury could infer that Mr. Bryant's superiors had knowledge of his intent to testify.

Mr. Bryant moved for a new trial and to reopen the case to admit into evidence a deposition by DYRS Chief of Services David Muhammad.[1] Mr. Muhammad had testified at the deposition that he conferred with Superintendent Dunbar—who evidence showed knew of Mr. Bryant's intent to testify—about Mr. Bryant shortly before Mr. Bryant was fired. According to Mr. Muhammad, Superintendent Dunbar said that he "did not believe [Mr. Bryant] should continue to work in his position." Mr. Muhammad testified that he then recommended to Director Schiraldi that Mr. Bryant be terminated.

The trial court denied Mr. Bryant's motion to reopen, concluding that even with the Muhammad deposition, Mr. Bryant did not provide sufficient evidence that a reasonable jury could infer that Director Schiraldi—the person who fired Mr. Bryant—knew that Mr. Bryant intended to testify against the District. This appeal followed.

---

[1] Mr. Muhammad's position in the organizational hierarchy at DYRS was one step below Director Schiraldi and one step above Superintendent Dunbar.

## II.

Claims under both the DCHRA and Title VII are analyzed using the approach laid out in *McDonnell Douglas Corp. See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012). Under the *McDonnell Douglas* framework, a plaintiff must first make a prima facie showing of retaliation by a preponderance of the evidence, which gives rise to a presumption that the termination was unlawful. *Furline v. Morrison*, 953 A.2d 344, 352 (D.C. 2008). At that point, the employer may rebut this presumption by articulating a legitimate reason for the adverse employment action. *Id.* at 352. If the employer offers such an explanation, the presumption of illegality drops out of the case, and the employee has the ultimate burden of proving retaliation by a preponderance of the evidence. *Id*. at 353.

The analytical framework for establishing a prima facie case of retaliation is the same under both the DCHRA and Title VII. *McFarland v. The George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007) (citations omitted). A plaintiff must demonstrate that: (1) he was engaged in a protected activity; (2) the employer took an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Taylor v. District of Columbia Water & Sewer Auth.*, 957 A.2d 45, 54 (D.C. 2008). Evidence of retaliation may be direct or circumstantial. *See Hollins v. Federal Nat'l Mortg. Ass'n*, 760 A.2d 563, 574-

75 (D.C. 2000). Before a factfinder can infer causation, there must be evidence that the employer was aware of the protected activity. *See McFarland*, 935 A.2d at 358.

We consider first whether the trial court correctly concluded that Mr. Bryant failed to present a prima facie case even if the Muhammad deposition is included.[2] If the court was right in this regard, its rejection of Mr. Bryant's request to reopen the evidence, even if unjustified, was harmless. The trial court concluded that Mr. Bryant failed to satisfy prong three of the prima facie standard: a causal connection between the protected activity and the adverse action. Relying on our decision in *McFarland*, 935 A.2d at 357, the trial court emphasized that Mr. Bryant needed to demonstrate that the decisionmakers who chose to fire Mr. Bryant had "actual knowledge" of his intent to testify. After all, if the relevant decisionmaker

---

[2] The District argues that Mr. Bryant has forfeited any claim that the trial court abused its discretion by refusing to reopen the case to admit the Muhammad deposition into evidence, implicitly suggesting that we cannot consider the Muhammad deposition at all. While Mr. Bryant's claim could have been more explicit, he clearly argues in his brief that the trial court erred as a matter of law when concluding that he did not present a prima facie case, and in so doing, repeatedly points to evidence from the Muhammad deposition as sufficient to satisfy his burden. Moreover, Mr. Bryant argues that the trial court's reliance on *McFarland* and its failure to address the "cat's paw theory," *see Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011), when considering his motion to reopen the case to admit the deposition caused the court to erroneously dismiss his claim. We thus interpret Mr. Bryant's brief as challenging the trial court's ruling that he had not satisfied the prima facie standard even with the Muhammad deposition.

did not have actual knowledge of such protected activity, Mr. Bryant could not establish that he was fired *because of* that protected activity.[3]

The "actual knowledge" requirement in *McFarland* does not, however, abrogate the well-established rule that a prima facie case can consist solely of circumstantial evidence. In fact, the *McDonnell Douglas* framework was specifically designed for cases in which the plaintiff only presents circumstantial evidence. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (explaining the purpose of *McDonnell Douglas*); *Propp v. Counterpart Int'l*, 39 A.3d 856, 862-63 (D.C. 2012) (noting that *McDonnell Douglas* is used when the plaintiff relies solely on circumstantial evidence). *McFarland* itself recognizes that

---

[3] Although the evidence shows that several individuals were involved in the decision to fire Mr. Bryant, the trial court found that Director Schiraldi was the ultimate decisionmaker and that his knowledge *vel non* was essential to Mr. Bryant's case. Mr. Bryant argues on appeal that the trial court erred by failing to consider the cat's paw theory of liability, *see Furline* and *Staub*, under which the relevant actor would be Superintendent Dunbar, who, according to the evidence, had knowledge of Mr. Bryant's activity and who told Mr. Muhammad that Mr. Bryant should be fired, leading Mr. Muhammad to recommend Mr. Bryant's termination to Director Schiraldi. Several federal courts of appeals have applied *Staub* to Title VII claims rather than requiring the plaintiff to show that the ultimate decisionmaker possessed discriminatory intent. *See, e.g.*, *Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1294-96 (10th Cir. 2013); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350 (6th Cir. 2012); *Hicks v. Forest Pres. Dist.*, 677 F.3d 781, 789-90 (7th Cir. 2012); *McKenna v. City of Philadelphia*, 649 F.3d 171, 177 (3d Cir. 2011). Because we dispose of this case on other grounds, we need not consider to what extent the cat's paw theory has abrogated *McFarland*.

"[t]he prima facie showing requires *circumstantial evidence* raising an inference of purposeful discrimination." 935 A.2d at 346 (emphasis added). *See also Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009) ("To survive summary judgment, however, Jones needn't provide direct evidence that his supervisors knew of his protected activity; he need only offer circumstantial evidence that could reasonably support an inference that they did."). As the Supreme Court has stated, "[t]he burden of establishing a prima facie case . . . is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, Mr. Bryant alleges that he was fired because he intended to testify against the District in the sexual harassment claim. During his case-in-chief, Mr. Bryant testified that the sexual harassment case was a topic of discussion among departmental personnel and that he escorted a legal team around the facility that was investigating the claim. He testified that he told the District's lawyers and Mr. Thomas, in the presence of Superintendent Dunbar, about his intent to testify in that case. And Mr. Muhammad testified in his deposition that Superintendent Dunbar made the recommendation to terminate Mr. Bryant—a recommendation that was passed from Dunbar to Muhammad to Schiraldi.

We conclude that this is enough evidence from which a reasonable jury could infer that Director Schiraldi had actual knowledge that Mr. Bryant intended

to testify in the sexual harassment litigation, allowing Mr. Bryant to survive summary judgment and proceed to step two of the *McDonnell Douglas* framework. *Cf. Jones*, 557 F.3d at 679 (holding that evidence "the *employer* had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity" was sufficient to establish a prima facie case that his *supervisors* knew of the protected activity). Mr. Bryant has demonstrated that an individual who recommended his termination knew of his protected activity and that there was a direct chain of conversation between that individual (Superintendent Dunbar) and the decisionmaker (Director Schiraldi) about firing Mr. Bryant. Mr. Bryant has not produced a smoking gun showing exactly what Mr. Dunbar, Mr. Muhammad, and Mr. Schiraldi discussed, but he need not do so for a jury to reasonably infer that Director Schiraldi knew of Mr. Bryant's intent to testify. *Cf. Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460-61 (11th Cir. 1998) (allowing jury to infer that ultimate decisionmaker had knowledge of protected activity when others involved in decision to terminate had such knowledge).

## III.

Having determined that Mr. Bryant produced sufficient evidence to establish a prima facie claim if the Muhammad deposition is included, we next determine whether the trial court erred by denying Mr. Bryant's motion to reopen the case to

submit the deposition.[4]  "[A] party who has rested may move to reopen [one's] case in order to cure an evidentiary deficiency identified in a Rule 50 (a) motion." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004) (citing *Garcia v. Woman's Hosp.*, 97 F.3d 810, 813-14 (5th Cir. 1996)).  The question of permitting a party to reopen its case is committed to the sound discretion of the trial court.  *Shelton v. United States*, 983 A.2d 979, 987 (D.C. 2009) (citing *Davis v. United States*, 735 A.2d 467, 472 (D.C. 1999)).  Therefore, we will not disturb a denial of a motion to reopen a case unless we find an abuse of discretion.  *Id.* (citing *Davis*, 735 A.2d at 472).  "In determining whether the court abused its discretion in making its ruling this court considers, among other factors (1) the timeliness of the motion, (2) the nature of the evidence, including its relevance, and (3) prejudice to the opposing party."  *Id.* (quoting *Davis*, 735 A.2d at 472; *Diaz v. United States*, 716 A.2d 173, 182 (D.C. 1998)).

---

[4]  We again note that while Mr. Bryant does not make this claim in so many words, we understand Mr. Bryant's brief to challenge the trial court's holding that he had not satisfied the prima facie standard even with the Muhammad deposition. See note 2, *supra*.  A necessary corollary of that argument is that the trial court erred by refusing to reopen the case to admit the Muhammad deposition so that he *could* satisfy his prima facie case.  While Mr. Bryant does not explicitly argue that the trial court abused its discretion, we note that a court "by definition abuses its discretion when it makes an error of law."  *Ford v. ChartOne, Inc.*, 908 A.2d 72, 84 (D.C. 2006).  His claim that the trial court erred as a matter of law thus encompasses a claim that the trial court abused its discretion.

The request to reopen the record was timely as the request came immediately after the trial court stated its concern regarding the lack of evidence demonstrating that Director Schiraldi had knowledge of Mr. Bryant's protected activity. The evidence proffered was responsive and relevant to the court's concern, as the deposition provides evidence of conversations about whether Mr. Bryant should be fired that included Superintendent Dunbar, who knew of Mr. Bryant's intent to testify. The deposition thus provides crucial evidence that allows Mr. Bryant to make his prima facie claim, which then shifts the burden to the District to offer a legitimate or non-retaliatory reason for the discharge. *Propp*, 39 A.3d at 863. Lastly, both parties were aware of the deposition and the District would not have been surprised by its content. Therefore, on the existing record, we conclude that the trial court abused its discretion in declining to allow Mr. Bryant to reopen his case solely to present the proffered Muhammad deposition.

## IV.

For the reasons stated in this opinion, we vacate the trial judgment and remand the case to the trial court for procedures consistent with this opinion.

*So ordered.*